STATE of Alaska, CHILD SUPPORT ENFORCEMENT DIVISION, as assignee of Roseann Gammons, Appellants,

v.

David S. GAMMONS, Appellee.

STATE of Alaska, CHILD SUPPORT ENFORCEMENT DIVISION, as assignee of Barry Tim James, Appellants,

v.

Donna M. JAMES, Appellee.

STATE of Alaska, CHILD SUPPORT ENFORCEMENT DIVISION, as assignee of Robyn M. Bush, Appellants,

v.

Tommy W. BUSH, Appellee.

STATE of Alaska, CHILD SUPPORT ENFORCEMENT DIVISION, as assignee of Roberta L. Pierce, Appellants,

v.

David W. PIERCE, Jr., Appellee,

STATE of Alaska, CHILD SUPPORT ENFORCEMENT DIVISION, as assignee of Feodosia H. Merculief, Appellants,

v.

Antony P. MERCULIEF, Sr., Appellee.

Nos. S–2360, S–2423, S–2579, S–2653, S–2652.

Supreme Court of Alaska.

May 5, 1989.

---

Scott Jay Sidell, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for appellants.

Francis M. Flavin, Anchorage, for appellee Bush.

1. AS 47.23.120(a) provides:
   An obligor is liable to the state in the amount of assistance granted ... to a child whom the obligor owes a duty of support

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal presents a question of statutory interpretation. On appeal the State of Alaska, Child Support Enforcement Division (CSED), is seeking reimbursement from noncustodial parents whose children received public assistance from Aid for Families with Dependent Children (AFDC). The issue is whether a support order which does not require the noncustodial parent to make any child support payment should be considered a "support order" under AS 47.-23.120(a)[1], thus denying CSED any reimbursement from the noncustodial parent. The trial court concluded that AFDC was not entitled to reimbursement. We reverse.

## FACTS AND PROCEEDINGS

This appeal involves five cases which have been consolidated. The appellees are Bush, Gammons, James, Pierce and Merculief; the appellant is the State of Alaska, Child Support Enforcement Division. In each case, a married couple with children petitioned and received a divorce in the Alaska superior court.

As part of the divorce decree, in the cases of James, Pierce, and Merculief, the parties agreed that one parent would have legal and physical custody of the child with no child support payments to be paid by the noncustodial parent. In Gammons' case, the parties agreed to joint custody of their child with no child support payments to be paid by either parent. In Bush's case, the parties agreed to split the custody of the two children. Each parent had joint legal custody of both children, physical custody of one child, and neither parent was required to pay any child support.

except that if a support order has been entered, the liability of the obligor may not exceed the amount of support provided for in the support order.

Later, the custodial parent received public assistance from AFDC.[2] As a condition of accepting the public assistance, each custodial parent assigned her right of support to the state through the CSED. *See* AS 47.25.345.

CSED, as assignee of the custodial parent, filed a motion for reimbursement from the noncustodial parent for the previously provided public assistance. The trial court denied CSED's motion. CSED then moved for reconsideration as to James and Bush and for relief from the order as to Gammons. These motions were denied.[3] This appeal followed.

## DISCUSSION

The issues on appeal involve questions of law. Therefore, review is de novo and we can substitute our own judgment. *Foss Alaska Line v. Northland Services*, 724 P.2d 523, 526 (Alaska 1986).

### A. *Duty of Support*

■ CSED asserts that noncustodial parents have a common-law and statutory duty to support their children despite a dissolution decree which does not require any child support payments. Recently, we addressed and resolved this issue.

In *Matthews v. Matthews*, 739 P.2d 1298 (Alaska 1987), we stated that the duty of parents to support their children is grounded in common law and by statute[4] and exists in the presence or absence of a court order of support.[5] *Matthews*, 739 P.2d at 1299.

The parental obligation to support children includes the responsibility to reimburse third parties who have provided for the parent's child. *Matthews*, 739 P.2d at 1299 (citing *Baggs v. Anderson*, 528 P.2d 141, 143 (Utah 1974)). The claim for reimbursement "belongs to whomever supported the children, and is simply an action on a debt." *Matthews*, 739 P.2d at 1299.

Clearly, the parents in this case have a common-law and statutory duty[6] to support their children, notwithstanding the divorce decree which does not require any child support.

### B. *Support Order*

■ Next, CSED asserts that a provision in a divorce decree which does not require the noncustodial parent to make any child support payments is not a "support order" within AS 47.23.120(a).

AS 47.23.120(a) provides:

An obligor is liable to the state in the amount of assistance granted ... to a child whom the obligor owes a duty of support except that if a support order has been entered, the liability of the obligor may not exceed the amount of support provided for in the support order.

Then, AS 47.23.900(7) defines a support order as:

any judgment, decree, or order of child support in favor of an obligee .... re-

---

2. In the *Bush* case, one of two custodial parents received public assistance from AFDC.

3. In denying the motion as to James, the trial court briefly addressed the issue of reimbursement for previously provided public assistance. The trial court noted that it understood AS 47.23.120(a) "to limit the amount of the obligor's liability [to AFDC for public assistance previously provided] to the amount of child support provided for in the support order." Therefore, since the divorce decree did not require any child support payments, the noncustodial parent did not have to reimburse AFDC for the previously provided financial assistance.

4. By statute, parents have a duty to support their children. "Each parent is bound to maintain the parent's children when poor and unable to work to maintain themselves." AS 25.20.030.

5. Prior to the *Matthews* case, in *Johansen v. State*, 491 P.2d 759 (Alaska 1971), we drew a distinction between a parent's common-law duty of support and a court order to pay a set sum of money. The court stated, "[d]efendant, as a father, is under a general duty to support his children. He is further under a specific obligation to pay a certain sum by virtue of the court order." *Johansen*, 491 P.2d at 766 (citations omitted). Commenting on the same duty of parental support, in *Saask* we stated, " 'duty of support' is expansively defined in AS 25.25.010(2) to encompass the common law duty of parents to support their children." *Saask v. Yandell*, 702 P.2d 1327, 1330 (Alaska 1985) (citations omitted).

6. *See supra* note 4.

gardless of the kind of action or proceeding in which it is entered.

The obligee is the individual to whom the duty of support is owed, in this case, the child. AS 47.23.900(5).

The statute recognizes that the state is entitled to reimbursement for public assistance just as any other third party would be entitled to reimbursement. *Cf. Matthews,* 739 P.2d at 1299 ("A parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes.") (citing *Baggs v. Anderson,* 528 P.2d 141, 143 (Utah 1974)). However, AS 47.23.120(a) appears to limit the obligor's liability to the amount of the child support order which, in this case, would be nothing.

Whether or not the no-support order is a "support order" is an issue of statutory interpretation. Commenting on statutory interpretation in *City & Borough of Sitka,* we stated:

> Although the starting point in construing a statute is the language of the statute itself, reference to legislative history may provide insight that is helpful in determining the statute's meaning.

*City & Borough of Sitka v. IBEW, Local 1547,* 653 P.2d 332, 336 (Alaska 1982) (citing *North Slope Borough v. Sohio Petroleum,* 585 P.2d 534, 540 (Alaska 1978)).[7] Therefore, we consider the relevant history of Title 47.

In 1977, the legislature adopted AS 47.-23.120(a). When discussing the purpose of the law, the legislature declared the policy of the statute:

> [T]his Act [shall] be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently born[e] by the general citizenry through welfare and welfare-related programs.

Ch. 126, § 1, SLA 1977.

Moreover, the fundamental public policy of this state is that parents should bear the primary and continuing obligation to support their children. *Ralston v. State ex rel. Wall,* 728 P.2d 635, 637 (Alaska 1986); *Houger v. Houger,* 449 P.2d 766, 770 (Alaska 1969). This duty of support can only be relieved in extreme circumstances. *Houger,* 449 P.2d at 770.

Furthermore, although this court has never addressed the issue at bar, several other jurisdictions have. *See State, Dep't of Revenue v. Hubbard,* 720 P.2d 1177 (Mont.1986) (noncustodial parent required to reimburse State Department of Social Services despite divorce decree which did not set child support payments); *Roberts v. Roberts,* 592 P.2d 597 (Utah 1979) (noncustodial parent required to reimburse AFDC for support of the child prior to the court's order fixing child support). *Cf. Florida, Dep't of Health & Rehab. Serv. ex rel. Downey v. Vernon,* 138 Cal.App.3d 827, 188 Cal.Rptr. 322 (1982) (mother required to reimburse AFDC for the future support of her children). Based on the foregoing analysis, it is evident that the no-support order is not a "support order" within the meaning of the statute. In theory, this would leave the noncustodial parent liable for the entire amount of public assistance provided. AS 47.23.120 does not address this issue. However, AS 47.23.020(2)(a) incorporates 42 U.S.C. § 656(a)(1)(B), which provides that if there is not a court order the noncustodial parent must repay AFDC, "an amount determined by the state in accordance with a formula approved by the Secretary."

For this court to hold otherwise would create a legitimate means to circumvent the present system. Parents could agree to no-support orders in an attempt to evade supporting their children, knowing that the state would provide for their children and knowing that the state would have no recourse against them. We recognize that parents could agree to nominal child support payments in an attempt to shield themselves from liability. For example, parents could agree to monthly child support payments of $5.00. In the absence of

---

**7.** In *North Slope,* we rejected the "'plain meaning' rule as a strict exclusionary rule." The rule states that if the meaning of a word or term is clear, legislative history will not be consulted. *North Slope Borough v. Sohio Petroleum,* 585 P.2d 534, 540 n. 7 (Alaska 1978).

extreme circumstances, this court would not limit to $5.00 the state's ability to recover for previously provided public assistance. In essence, the no-support order will become a shield, thus undermining the intent of the legislature.

In sum, the no-support order is not a "support order" within the meaning of AS 47.23.120(a), and CSED is entitled to reimbursement.[8] Therefore, we REVERSE the decision of the trial court and REMAND for further proceedings consistent with this opinion.

---

**8.** Recently adopted Civil Rule 90.3(c)(1)(B) provides that a minimum child support order of no less than $40.00 per month be required of a child support obligor who has an adjusted income which is below poverty level. If this rule is strictly interpreted there will no longer be any no-support orders.