Clarence Wayne ESTON, Appellant,

v.

Patricia Ann (Eston) AMAN, et al., Respondents.

No. 62623.

Missouri Court of Appeals, Eastern District, Northern Division.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 10, 1993.

Application to Transfer Denied March 23, 1993.

---

Mitchell & Kruse, Russell J. Kruse, Palmyra, for appellant.

Daniel J. Pingelton, Columbia, for respondents.

KAROHL, Chief Judge.

This appeal follows judgment in the circuit court finding Clarence Wayne Eston owes the Missouri Division of Child Support Enforcement [the state] a refund of AFDC benefits advanced Patricia Ann Aman [formerly Eston] for child support between January 1, 1981 and October 31, 1981. For simplicity we refer to Clarence Eston as Father and Patricia Aman as Mother.

The parties were divorced in 1973. The divorce decree required Father to pay $14.00 per week per child for child support of the two children to the circuit court. Father paid promptly for both children until 1979. Employment problems then made the payments difficult or impossible.

In 1980, after being without support for a year, Mother applied for AFDC benefits. She received benefits from January 1981 to October 31, 1981. In order to receive the benefits, Mother signed an "Assignment of Support Rights." She agreed to transfer to the state her rights to the existing arrearage and current support in order to reimburse the state for AFDC benefits received in lieu of child support. In ten months, she was paid $2,732 in AFDC funds.

In November 1984, Mother asked for collection services from the state regarding an arrearage which accumulated from November 1, 1981 to 1984. She began receiving support again in 1985 when Father signed a Voluntary Income Assignment as a result of the state's efforts on her behalf. All the money received in excess of the current support due apparently went toward Mother's arrearage, not the AFDC claim.

Eventually, Mother notified the state that she had hired a private attorney to aid in the collection process. The result was a 1987 settlement between Father and Mother. The total arrearage approximated $10,000 but was settled for $4,000.

Father instituted this lawsuit to obtain his intercepted tax refunds and preclude the state from collecting further sums under the 1981 Assignment of Support Rights. He argues the state's claim terminated in his settlement with Mother.

Father attempted a direct appeal to the Supreme Court on the theory an interpretation of provisions of the Missouri Constitution was required to resolve the issues. The Supreme Court transferred the case to this court. We look to the merits.

■ For simplicity, we will categorize sums due on the date of termination of the period of the assignment in this case as Category I. This includes arrearage accrued before December 1980 when Mother assigned her claim. It also includes arrearage accumulating during the period Mother received benefits. Category II represents the arrearage accumulated after November 1, 1981, when the benefits terminated. The state claims its rights to Category I arrearage payments were subordinate to arrearage due Mother after termination of AFDC benefits. We agree.

■ Father's position is that his 1987 settlement resolved *all* child support obligations accrued under the 1973 divorce decree. He contends the state did not inform him of Mother's assignment, knew of the settlement, approved of it after the fact, and is bound by it. He relies on 45 CFR § 302.51(f) which appears to provide that

recovery of AFDC funds is primary to payment of a custody obligation arrearage to custodial parent (Mother). Hence, the $4000 payment in 1987 extinguished the state's maximum claim of $2732.

The state responds by contending Father made his 1987 settlement with Mother with at least constructive knowledge of the 1981 assignment and the $4000 settlement was less than the arrearage which accumulated after the period of the assignment terminated on November 1, 1981. Hence, Mother was entitled to the entire amount because 45 CFR § 302.51(f) does not apply to post-assignment arrearages which must be distributed in accordance with § 42 USC 657(c). We agree and so hold. As a result the $4000, 1987 settlement of a total disputed claim of over $10,000 was properly all given to Mother to apply to the Category II arrearage. Mother is barred by the settlement from collecting any additional funds. However, the state is not barred by § 45 CFR 302.51(f) from recovery of the AFDC payments advanced to support Father's children.

According to Missouri law, which is based on the federal scheme, any payments made by the obligor (Father) are to be distributed by the clerk of the court. Section 454.415 RSMo 1986. Each state may adopt its own scheme as long as it is federally approved. *Id. In Re Marriage of Lathem,* 642 S.W.2d 694, 698 (Mo.App.1982). The Missouri plan has been approved. In determining whether to pay the state or the custodial parent, the statute directs the clerk to pay benefits accruing after the termination of AFDC benefits first to the custodial parent. Repayment to the state is subordinate. Section 454.415 RSMo 1986. Therefore, the $4,000 should be applied first to the Category II, as the state contends.

■ The issue then becomes whether Mother's settlement coupled with the assignment terminated the state's claim for arrearage. The general rule regarding assignments is that an absolute assignment of all rights and interests in the agreement works as a divestiture of all rights and interests of the assignor and vests them in

the assignee. *Kerhsner v. Hilt Truck Line,* 637 S.W.2d 769, 771–72 (Mo.App. 1982). As applied to this case, Mother had no authority to settle the state's right to recover unpaid support payments which occurred before and during the period Mother received AFDC benefits.

In *Lathem,* the court addressed the issue of real party in interest to enforce a judgment to pay child support. In reaching its decision, the court considered the policy behind collection of AFDC benefits under the state and federal statutes. Father in that case attempted to argue that Mother was not a real party in interest to enforce a judgment for child support because she had previously assigned her rights to receive support in order to receive AFDC. The court rejected this argument under the facts of *Lathem,* but we find the argument applicable to the case at hand.

When Mother assigned her rights, it was an absolute assignment with respect to money the government expended in lieu of support. *See Lathem,* 642 S.W.2d at 698. The period of assignment of her right to receive additional funds terminated when Mother ceased receiving benefits. However, the assignment remained in effect for recovery of benefits advanced to Mother. Mother settled with father for a sum less than accrued after termination of AFDC funds. Father's obligation to the state was not extinguished by Mother's settlement.

■ Father's second point on appeal involves an issue of notice. Father claims the state failed to inform him of Mother's assignment. Father contends the failure to give notice required by § 208.040 RSMo 1978 should have the effect of binding the state by the settlement in full. Therefore, Father's settlement with Mother extinguished all obligations regarding child support.

Father bases his argument on the common law of assignment and statutory requirements. At the outset, we find the notice requirement of § 208.040.5 RSMo 1978 is not a per se prerequisite for enforcing the assignment and there was evidence from which the court could find Father had notice of the AFDC payments before the

settlement. In June 1986, Father was sent a notice regarding an April 1986, tax refund interception. The letter explicitly states the refund was intercepted to reduce the balance of delinquent obligations for the period Father's dependents received AFDC. Although notice was not properly given and received at or shortly after the assignment in 1981, Father clearly had notice of an AFDC claim before the 1987 settlement. Accordingly, Father's reliance on *Boyd v. Sloan*, 335 Mo. 163, 71 S.W.2d 1065, 1066 (1934) fails.

■ Father next argues notice was mandatory under § 208.040.5 RSMo 1978 and *State ex rel. Williams v. Williams*, 647 S.W.2d 590, 593 (Mo.App.1983). We disagree. While the statute mandates notice to the clerk of the court, notice is not mandatory for the delinquent parent. The delinquent parent may not be available at a known location. The apparent purpose of the notice is to cause the clerk to forward future payments, if any, to the appropriate place. Since Father was already making payments to the court under the divorce decree, the only concern was where the clerk would send payments received from Father. Therefore, we find no merit to Father's lack of notice contention.

■ In point three, Father contends his right to due process was violated through lack of notice. Where Father had at least constructive notice before the settlement, Father was not denied due process. Moreover, repayment for advances to support his children could hardly be the subject of a denial of due process.

■ As a fourth alternative, Father alleges fraud as a bar to the state's claim. He contends Mother should have paid any amounts received to the state and should have informed Father of her AFDC receipts.

The elements of fraud are: (1) false material representations; (2) defendant's knowledge of its falsity or ignorance of its truth; (3) defendant's intent that it be acted upon by plaintiff in a manner reasonably contemplated; (4) plaintiff's ignorance of falsity of the statement; (5) plaintiff's rightful reliance on its truth and right to rely thereon; and (6) proximate injury.

*Norden v. Friedman*, 756 S.W.2d 158, 164 (Mo. banc 1988).

Even if elements (1) through (3) were met, without deciding that issue, elements (4), (5) and (6) were not met. The state's recovery efforts provided Father with notice of Mother's receipt of AFDC prior to the settlement in 1987. He cannot now claim ignorance or rightful reliance. Additionally, Father was in no way damaged. He was aware there was a sum due. Because he has not and will not be required to pay twice, the state's right to enforce the assignment is not dependent on Mother's conduct in negotiating the settlement.

■ In point five, Father sets out the issue of retroactive application of § 454.465 RSMo 1986, which became effective August 13, 1982. He claims the court erroneously applied the statute to protect the state's efforts to collect AFDC payments made in 1981, prior to the inception of the collection procedure statute. The statute provides no agreement between the obligor and obligee can reduce or terminate the rights of the state to collect under the assignment. Section 454.464.2 RSMo 1986. Father argues in addition, that *State v. Thurwalker*, 766 S.W.2d 483 (Mo.App.1989) stands for the principle that retroactive application would be improper in this case. We disagree.

In *Thurwalker*, Mother and Father acted in a manner the court considered to be a waiver of support rights. When the state tried to enforce support under the statute, the court found it did not meet the two prerequisites of retroactive application: (1) the statute mandates retroactive applications or (2) it effects only procedural rights. In *Thurwalker*, the court decided that because the parties had waived support, retroactive application would effect substantive rights in the sense that a new obligation would be created.

In the current case, the statute does not affect substantive rights. Father had an obligation to pay child support under the divorce decree. When Mother executed the

assignment, Father's obligation still existed. Her rights as a judgment creditor were transferred to the state. Section 208.040.4 RSMo 1978. That obligation is not changed by retroactive application of the statute. The settlement between Father and Mother, therefore, did not affect the state's existing right to collect from Father.

Lastly, Father argues the state's claim is barred by laches and equitable estoppel. "Fundamental to an estoppel claim against the government is that in addition to satisfying elements of ordinary estoppel, governmental conduct complained of must amount to affirmative misconduct." *Farmer's & Laborers' v. Director of Revenue,* 742 S.W.2d 141, 413 (Mo. banc 1987). In this case, we find no conduct rising to affirmative misconduct.

As previously discussed, the separation of the claim into two categories makes clear the state is entitled to the reimbursement it seeks. The confusion regarding the notice requirements, the fact that some notices received by Father referenced only the Category II claims, and knowledge of the settlement do not meet the estoppel requirements. Point denied.

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.