**Patrick Bond FLANIGIN, Appellant,**

**v.**

**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellee.**

**No. S–7745.**

Supreme Court of Alaska.

Oct. 31, 1997.

Kenneth C. Kirk, Anchorage, for Appellant.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

### OPINION

MATTHEWS, Justice.

The Child Support Enforcement Division (CSED) is authorized to administratively establish child support orders. CSED initiates an administrative case seeking such an order through service of a "Notice and Finding of Financial Responsibility" (NFFR) upon a putative obligor parent. The question in this case is whether CSED has the general authority to order the payment of support arrearages accruing prior to service of an NFFR. Despite a CSED policy interpretation to the contrary, we answer "yes," based

---

on the clear language of the authorizing statutes.

## I. FACTS AND PROCEEDINGS

The facts in this case are not disputed. Hildegunn Egdetveit gave birth to Benjamin Knute Egdetveit on July 20, 1990. Mother and child live in Norway. Patrick Flanigin lives in Alaska. He signed an "acknowledgment of paternity" regarding Benjamin at the Norwegian Consulate on December 6, 1990.

On January 1, 1991, Hildegunn began receiving "advance payments" on behalf of Benjamin from the Kingdom of Norway. These advance payments are paid to any child who resides in Norway with only one parent. The payments are not based on financial need. Prior to the proceedings giving rise to this appeal, no child support order had been entered against Flanigin in any jurisdiction.

This case came to CSED as a Uniform Reciprocal Enforcement of Support Act (URESA) petition from the Kingdom of Norway. CSED decided to handle the case administratively. Flanigin was served with a NFFR on May 1, 1994. In the NFFR, CSED claimed that Flanigin was obligated to pay $742 per month in ongoing support and that he owed $2,226 in arrearages from December 1, 1993 to February 28, 1994. Flanigin requested an informal conference. An informal decision was issued on November 3, 1994, in which CSED modified the amounts in the NFFR to $561 in monthly support and $29,946 in arrearages accrued from January 1, 1991 to November 30, 1994.

Flanigin then requested a formal hearing as provided for in AS 25.27.170. At the hearing, Flanigin argued that no arrearages could be established administratively in his case because no Aid to Families with Dependent Children (AFDC) funds had been paid on behalf of Benjamin. He further argued that, even if CSED had the authority to administratively establish non-AFDC arrearages, the amount should be limited to that actually paid by the Norwegian government. The hearing officer entered a decision finding that CSED had no statutory authority to administratively establish arrearages that accrued prior to the service of the NFFR when no AFDC had been paid. Pursuant to this finding, the hearing examiner entered an order requiring Flanigin to pay $886 in monthly support and $9,746 in arrearages accrued from February 1994 to December 31, 1994. Both Flanigin and CSED moved for reconsideration of this order.

Flanigin's motion was denied and CSED's was granted. CSED's argument on reconsideration was based on the fourth paragraph of CSED Policy 9–1 which reads, in part:

> When the [child support order] is established following the adjudication of paternity, the support order may be retroactive to the date the obligor was served with the paternity complaint, provided the complaint gave notice that both paternity and a support obligation were sought to be established by the court. Service of the paternity complaint on the putative father corresponds to the service of the Notice and Finding of Financial Responsibility in AS 25.27.160 where paternity is not in dispute.

The hearing officer, citing Policy 9–1, found Flanigin liable for arrearages back to the date on which he signed the acknowledgment of paternity, a sum of $41,624 through February 1995.

Flanigin appealed to the superior court. The superior court affirmed. Flanigin appeals claiming error in the assessment of arrearages prior to the service of the NFFR.

## II. STANDARD OF REVIEW

 When the superior court acts as an intermediate court of appeal, we conduct an independent review of the merits of the administrative determination. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). Determining the breadth of the legislature's grant of authority to an agency is an exercise in statutory interpretation that does not require special agency expertise. *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1197 (Alaska 1995). Therefore, this court uses its independent judgment. *Konecky v. Camco Wireline, Inc.*, 920 P.2d 277, 280 (Alaska 1996).

## III. DISCUSSION

█ Flanigin does not dispute that Hilde-gunn or the Kingdom of Norway could maintain a debt action in court for reimbursement of child support under *Matthews v. Matthews*, 739 P.2d 1298 (Alaska 1987). The only issue before us is whether CSED can administratively establish child support arrearages for a period prior to the service of an NFFR when no support order is in existence.

Alaska Statute 25.27.140(a) authorizes the administrative establishment of child support orders. It reads, in part:

(a) If no support order has been entered, the agency [CSED] may establish a duty of support utilizing the procedures prescribed in AS 25.27.160–25.27.220 and may enforce a duty of support utilizing the procedure prescribed in AS 25.27.230–25.27.270.

Alaska Statute 25.27.160(a) describes how an administrative case is initiated:

(a) An action to establish a duty of support authorized under AS 25.27.140(a) is initiated by the agency serving on the alleged obligor a notice and finding of financial responsibility. The notice and finding served under this subsection shall be served personally or by registered, certified, or insured mail, return receipt requested, for restricted delivery only to the person to whom the notice and finding is directed or to the person authorized under federal regulation to receive that person's restricted delivery mail.

The term "duty of support" is defined in AS 25.27.900(3) as follows:

In this chapter

. . . .

(3) "duty of support" includes a duty of support imposed or imposable by law, by a court order, decree or judgment, or by a finding or decision rendered under this chapter whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance, or otherwise, and includes the duty to pay arrearages of support past due and unpaid together with penalties and interest on arrearages imposed under AS 25.27.020(a)(2)(C).

Alaska Statute 25.27.170(d) defines the issues that the hearing officer shall decide in a formal hearing:

(d) The hearing officer shall determine the amount of periodic payments necessary to satisfy the past, present, and future liability of the alleged obligor under AS 25.27.120, if any, and under any duty of support imposable under the law. The amount of periodic payments determined under this subsection is not limited by the amount of any public assistance payment made to or for the benefit of the child.

These statutes plainly authorize CSED to enter orders establishing child support arrearages that have accrued prior to service of an NFFR even though no prior support order has been entered and no prior AFDC payments have been made. Substituting the definition of "duty of support" for the term, the effective language of subsection .140(a) is: "If no support order has been entered, the agency may establish a duty of support imposable by law . . . [including] the duty to pay arrearages of support past due and unpaid utilizing the procedures prescribed in [AS 25.27.170(d) ]." Further, making the same substitution, subsection .170(d) states that "the hearing officer shall determine the amount of periodic payments necessary to satisfy the past . . . liability of the alleged obligor . . . under any duty of support imposable by law [including] the duty to pay arrearages of support past due."

Flanigin argues that AS 25.27.160(a) provides a "basic rule . . . that when there is not a prior court order, CSED must first serve a NFFR on the alleged obligor, and it may then establish an ongoing child support order from that point forward." The language of subsection .160(a) on which Flanigin relies is as follows:

An action to establish a duty of support authorized under AS 25.27.140(a) is initiated by the agency serving on the alleged obligor a notice and finding of financial responsibility.

This language speaks to how the administrative proceeding is to be initiated. Concerning the remedies that may be obtained, it

states, given the definition of duty of support, that they may include "arrearages of support past due." Thus subsection .160(a) permits rather than precludes an action for arrearages.

Concerning subsection .170(d), Flanigin argues that this subsection merely "allows the Hearing Officer to establish a repayment schedule when administrative arrearages are established," but is not a grant of authority to the hearing officer to establish "arrearages which are not otherwise authorized." Although subsection .170(d) speaks directly only to the authority of the hearing officer to set a payment schedule for "the past, present, and future liability" of the obligor, we reject this argument. The subsection implies that the hearing officer has the authority to determine the past liability of the obligor. Further, arrearages are "otherwise authorized." Subsections .140(a) and .160(a), given that the term "duty of support" is defined to include arrearages, supply the authorization.

Flanigin makes a more plausible argument based on CSED Policy 9–1.[1] This policy provides that support orders are prospective from service of an NFFR except for AFDC reimbursement and except where the obligor was first served with a paternity complaint seeking to establish a support obligation. Flanigin's argument concerning Policy 9–1 may be summarized as follows. CSED Policy 9–1 falls within the definition of a regulation set forth in AS 44.62.640(a)(3).[2] Howev-

---

1. CSED Policy 9–1, adopted October 5, 1994, provides:

 In establishing an administrative support obligation, the amounts due from an obligor prior to the date of the service of the Notice and Finding of Financial Responsibility ("NFFR") shall be limited to reimbursement to the state for assistance provided to an obligee or obligees under the Aid to Families with Dependent Children Act ("AFDC").

 AS 25.27.160 provides that an administrative support order begins with the service of the Notice and Finding of Financial Responsibility. AS 25.27.120 entitles the state to reimbursement for AFDC paid for the benefit of an obligee limited either by the amount of an existing court order or an amount to be determined under Civil Rule 90.3. *State Child Support Enforce. v. Gammons*, 774 P.2d 181, 184 (Alaska 1989). A parent has a duty to reimburse others who provide the support the parent owes. When a party, other than the State, brings a claim for reimbursement it is an action on a debt. *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1987). There is no authority for beginning a child support order or for determining an amount due other than for AFDC reimbursement prior to the date of service of the Notice and Finding of Financial Responsibility. *See* Alaska Rev. Dec. 92–10. When determining the liability of an obligor prior to the date of service of a Notice and Finding of Financial Responsibility, limit the amounts due prior to the date of service to those amounts due under AS 25.27.120. No amounts should be included for periods prior to the date of service when AFDC was not provided to the obligee or obligees. A custodian may be advised that reimbursement may be obtained in a debt action against a parent who has failed to provide support prior to the date of service of the Notice and Finding of Financial Responsibility. Such an action must be brought in court.

 Note: When the administrative support order is established following the adjudication of paternity, the support order may be retroactive to the date the obligor was served with the paternity complaint, provided the complaint gave notice that both paternity and a support obligation were sought to be established by the court. Service of the paternity complaint on the putative father corresponds to the service of the Notice and Finding of Financial Responsibility in AS 25.27.160 where paternity is not in dispute.

2. AS 44.62.640(a)(3) provides:

 (a) In AS 44.62.010—44.62.320, unless the context otherwise requires,

 . . . .

 (3) "regulation" means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of a rule, regulation, order, or standard adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of a state agency; "regulation" does not include a form prescribed by a state agency or instructions relating to the use of the form, but this provision is not a limitation upon a requirement that a regulation be adopted under this chapter when one is needed to implement the law under which the form is issued; "regulation" includes "manuals," "policies," "instructions," "guides to enforcement," "interpretative bulletins," "interpretations," and the like, that have the effect of rules, orders, regulations, or standards of general application, and this and similar phraseology may not be used to avoid or circumvent this chapter; whether a regulation, regardless of name, is covered by this chapter depends in part on whether it affects the public or is used by the agency in dealing with the public[.]

er, he argues that CSED adopted the policy without following the methods required by the Administrative Procedure Act for submission, filing, publication and adoption of regulations. *See* AS 44.62.040–.290. Therefore, the policy is an invalid regulation and lacks the force of law. However, the first three paragraphs of the policy reflect CSED's interpretation as to the meaning of the statutes concerning its authority to order arrearages and this interpretation is entitled to judicial deference.[3]

CSED does not contest Flanigin's assertion that Policy 9–1 is a regulation within the scope of AS 44.62.640(a)(3) or his assertion that it was not validly adopted. Instead, CSED argues that rather than an interpretation of the meaning of the applicable statutes, the policy merely reflects CSED's choice to seek only prospective support when no public assistance has been paid.

We agree with Flanigin that the policy is a regulation that was not validly adopted, and therefore lacks the force of law. Further, in our view the policy may reasonably be read as an agency interpretation of existing law. As such, it would be entitled to some degree of deference if it reflected a reasonable interpretation of the statutory system. *Totemoff v. State,* 905 P.2d 954, 967 (Alaska 1995).

However, the policy does not reflect a reasonable interpretation of AS 25.27.140(a), .160(a), .170(d), and .900(3). For the reasons expressed *supra* at 448–449, these subsections can only reasonably be read as a grant of authority to CSED to administratively establish all child support arrearages that are imposable by law. Since child support arrearages are imposable by law from the date of a child's birth, arrearages may be imposed by CSED from that time.[4]

Flanigin's other arguments are conditioned on the assumption that we will determine that CSED lacked the general authority to assess arrearages prior to the NFFR. Since our determination is that CSED had such authority, these arguments are mooted.

Finally, we note that no issue is raised concerning the correctness of the amount of arrearages or ongoing support determined by CSED and both parties assume that Alaska rather than Norwegian substantive law governs this case.[5] We therefore have no occasion to examine these issues.

### IV. CONCLUSION

For the above reasons, the judgment of the superior court affirming the final order of CSED is AFFIRMED.

---

**3.** With respect to the fourth paragraph of the policy, Flanigin argues that it does not apply to his case as he was never served with a paternity complaint or a document seeking to establish a support obligation prior to the NFFR.

**4.** AS 25.20.030; *Vachon v. Pugliese,* 931 P.2d 371 (Alaska 1996); *Matthews v. Matthews,* 739 P.2d 1298 (Alaska 1987).

**5.** *See generally* on the choice of law issue, Louis Parley, *Choice of Law Issues Under Child Support Guidelines* 16 No. 5 FairShare 2 (1996) and cases cited therein; *see also Black v. Walker,* 295 N.J.Super. 244, 684 A.2d 1011 (A.D.1996).