**STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,**

v.

**Michael J. GREEN, Appellee.**

**No. S–7740.**

Supreme Court of Alaska.

July 30, 1999.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Edward L. Miner, Ross & Miner, P.C., Anchorage, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Without prior judicial approval, Michael Green paid a lump sum to the mother of his minor child, in part for the purpose of discharging his court-ordered past and future child support liability. When the mother began receiving public assistance for the child's benefit eighteen months later, the Child Support Enforcement Division (CSED) sought reimbursement from Green. The superior court credited Green's payment against his future child support obligation. Because Green's payment did not defeat CSED's independent statutory right to recover public assistance paid on behalf of his child, we reverse and remand.

### II. FACTS AND PROCEEDINGS

A child, Becky, was born to Michael Green and Lori Burton in 1988.[1] Green and Burton never married.

In 1989 the superior court entered an interim child support order requiring Green to pay child support through CSED. On July 9, 1990, the superior court granted Burton sole legal and physical custody of Becky and increased Green's monthly support obligation to $625, to be paid through CSED. The $625 amount was calculated under Alaska Civil Rule 90.3.

On July 30 Green and Burton entered into a written "Settlement Agreement" in which Green agreed to pay Burton a lump sum of $54,000. Green also agreed to relinquish "all parental rights" to Becky, and to waive "all future claims to custody and visitation, and ... the rights to receive notice of and consent to adoption." Burton agreed in exchange that the payment satisfied all amounts awarded for Becky's past and future

child support and the award of medical insurance for Becky until she reached majority. The agreement was filed with the court, but it was never noticed for hearing or judicially approved. Burton received the lump sum in late July or early August 1990.

On August 3, 1990, the court entered findings of fact and a judgment of $14,087 against Green for attorney's fees, costs, and back child support. Burton was then receiving Aid for Families with Dependent Children (AFDC), and had been since 1989.

On August 9 Tracy Green, Green's wife, informed CSED of the agreement. CSED informed her that Burton was receiving public assistance. When Tracy Green called CSED on August 14, CSED indicated that it needed a copy of the settlement agreement to adjust Michael Green's account. Later that day CSED informed Tracy Green that Burton could not enter into an agreement with Michael Green if Burton was on public assistance.

When the Greens contacted CSED two weeks later, CSED agreed not to seek enforcement of the child support obligation, but advised that it could not close the case until Burton withdrew from CSED's services and ceased receiving public assistance. CSED contacted the Alaska Division of Public Assistance in late August to confirm that Burton was no longer on public assistance. Her public assistance payments ended in August 1990.

In September Tracy Green called CSED to determine the status of the case. CSED indicated that it could not adjust Green's account until a judge signed the settlement agreement. Green's counsel informed CSED in October that a judge's signature was not required, and sent CSED copies of the agreement.

Burton asked CSED in November what would happen if she reapplied for public assistance. CSED explained that it would normally pursue reimbursement from an obligor parent, but that the settlement agreement complicated her case. It told Burton that it would nonetheless try to collect any future public assistance debt, apparently from Mi-

---

1. "Becky" and "Lori" are pseudonyms.

chael Green, should Burton re-apply for public assistance. Burton withdrew from CSED's services soon thereafter.

Burton again began receiving AFDC benefits in January 1992. CSED soon sought reimbursement from Green. The public assistance ($821) paid monthly to Burton exceeded the monthly support obligation ($625) imposed against Green in July 1990. Green argued in response to CSED's collection efforts that his 1990 lump sum payment entitled him to a credit against his child support obligation. He asserted that the $54,000 lump sum payment was intended to satisfy not only future child support but also the $14,087 judgment entered against him on August 3, 1990. Subtracting the 1990 judgment from his 1990 lump sum payment, Green argued for a credit of $39,913. The superior court awarded Green a credit of $57,912 against child support payable after August 1, 1990. The amount of the credit represented the future value of $39,913.

CSED appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ Whether Green is entitled to a credit against his child support obligation is a question of law we review de novo.[2] "Under this standard, it is our duty to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[3] We also review issues of statutory interpretation de novo.[4] There is no genuine dispute about whether Green made the lump sum payment, and no party claims that we should apply a clearly erroneous or other deferential standard in reviewing the superior court's decision.

### B. *Whether Any Part of the 1990 Lump Sum Payment Should Be Credited against CSED's 1992 Reimbursement Claim*

CSED contends that Green's agreement with Burton cannot destroy his duty to reim-

burse the state for public assistance paid on his child's behalf. It argues that the trial court erred in giving effect to an agreement that was invalid and unenforceable under Alaska law.

Green argues that because he has already paid his future child support by making the direct payment to Burton, CSED can collect nothing more from him without violating AS 25.27.120(a), which limits his liability to CSED to "the amount of support provided for in the support order." Green argues that because his direct payment in 1990 exceeded his then-due child support, the excess had to be credited against his future child support obligation, including CSED's reimbursement claim that arose after public assistance payments resumed in 1992. He asserts that his right to a credit turns on the fact of his prepayment, not on the validity of his agreement.

■ Green's agreement may be illegal in whole or in part and therefore unenforceable because it attempts to avoid or limit parental responsibilities contrary to law. Burton purported to agree that the lump sum payment satisfied awards for all past and future child support for Becky, and any award for Becky's medical insurance, despite the possibility that Becky's needs might change or Green's income might increase. Green purported to agree to relinquish all parental rights, including all future claims to custody and visitation, to waive notice of adoption, and to consent to adoption. CSED correctly observes that this was an attempt to terminate Green's parental rights and obligations, and was therefore void. We have refused to recognize a termination of parental rights except in a statutory proceeding or a child-in-need-of-aid proceeding.[5] By statute, a court in a separation, dissolution, or divorce proceeding "may not accept" a custodial parent's waiver of child support without

---

**2.** *See Miller v. Miller,* 890 P.2d 574, 576 (Alaska 1995) (reviewing de novo whether father was entitled to credit for social security payments against his child support obligation).

**3.** *Id.* (quotations omitted).

**4.** *See Boone v. Gipson,* 920 P.2d 746, 748 (Alaska 1996).

**5.** *See Perry v. Newkirk,* 871 P.2d 1150, 1151–55 (Alaska 1994).

proof that the custodial parent can support the child adequately.[6]

But it is not necessary to decide whether the terms of the agreement were enforceable against CSED or the child, because we agree with Green that the issue does not turn on the validity of the agreement. Instead, our inquiry focuses on three statutes: AS 25.27.120(a), which requires the obligor parent to reimburse the state for public assistance paid to the child; AS 47.25.345, which gives CSED an assignment to recoup those payments; and AS 25.27.020(b), which may give the obligor parent a credit for direct payments of child support. For the following reasons, we conclude that Burton's receipt of the direct payment did not defeat CSED's rights to seek reimbursement from Green.

1. *AS 25.27.120(a) and AS 47.25.345*

 CSED enjoys both independent and derivative rights to seek reimbursement for public assistance. CSED's independent right to recover public assistance reimbursement from child support obligors is derived from Alaska case law and Alaska statutes. In *Matthews v. Matthews,*[7] we noted that "[a] parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes."[8] In *State, CSED v. Gammons,*[9] we noted that "the state is entitled to reimbursement for public assistance just as any other third party would be entitled to reimbursement."[10]

6. AS 25.27.065(c).

7. 739 P.2d 1298 (Alaska 1987).

8. *See id.* at 1299.

9. 774 P.2d 181 (Alaska 1989).

10. *See id.* at 183–84.

11. At times relevant here, AS 25.27.120(a) provided:

An obligor is liable to the state in the amount of assistance granted under AS 47.07 and AS 47.25.310—47.25.420 to a child to whom the obligor owes a duty of support except that, if a support order has been entered, the liability of the obligor for assistance granted under AS 47.25.310—47.25.420 may not exceed the amount of support provided for in the support order, and, if a medical order of support has been entered, the liability of the obligor for assistance granted under AS 47.07 may not

 An independent right of recovery is created by AS 25.27.120(a). An obligor parent who "owes a duty of support" "is liable to the state" for public assistance paid to the child.[11] Green owed Becky a duty of support.[12] That duty existed whether or not Green had paid all support then owing. The duty of support does not end until the parental relationship is terminated. Alaska Statute 25.27.120(a) looks not to whether the obligor owes *support*, but to whether the obligor owes a *duty of support.* The statute imposes a duty that runs directly from the obligor to the state; it is not derivative of any rights the custodian or even the child might have to collect support. The statutory liability is for the amount of public assistance paid, or for the amount of child support ordered, whichever is less. The obligor's prepayment of court-ordered support without court approval does not reduce either measure of liability under subsection .120(a). Because CSED's right to recoupment under AS 25.27.120(a) is an independent right, Green could not defeat or diminish his direct liability to CSED by paying Burton directly.

By contrast, AS 47.25.345 gives CSED a derivative right to recoup public assistance payments by assigning to the state the public assistance recipient's support rights.[13] Under that statute, an AFDC applicant "is considered to have assigned [to CSED] all rights to accrued and continuing support that the

exceed the amount of support provided for in the medical order of support.

12. *See Matthews,* 739 P.2d at 1299 (holding that duty of parents to support their children is grounded in common law and statute).

13. AS 47.25.345 provides:

An applicant for or recipient of assistance under AS 47.25.310—47.25.420 is considered to have assigned to the state, through the child support enforcement agency, all rights to accrued and continuing support that the applicant and other persons for whom assistance is sought may have from all sources. The assignment takes effect upon a determination that the applicant is eligible for assistance under AS 47.25.310—47.25.420. Except with respect to the amount of any unpaid support obligation accrued under the assignment, the assignment terminates when the applicant ceases to receive assistance.

applicant and other persons for whom assistance is sought may have from all sources."[14] This statutory assignment "terminates when the applicant ceases to receive assistance."[15] Section .345 had the effect of assigning to CSED Burton's and Becky's rights against Green. Courts elsewhere have held that agreements between parents do not defeat the state's right to reimbursement and that the state's assigned rights are not limited by the acts of the AFDC recipient.[16] But we do not need to consider that issue here. Even assuming that Green's direct payments impaired CSED's derivative rights (those derived through Burton under AS 47.25.345) to enforce the 1990 child support order against Green, and ignoring the question whether Burton's acts could impair rights derived through the child, CSED's independent right continues.

█ Because CSED's independent right to recover AFDC payments under AS 25.27.120(a) is separate from CSED's derivative right to recover under AS 47.25.345, Burton's receipt of the lump sum payment did not defeat or diminish CSED's recoupment claim. Green's duty to reimburse the state under AS 25.27.120(a) was not affected by the prepayment. Rather, Green's direct liability simply depended on the existence of the duty to support his child. We need not consider whether circumstances could both defeat CSED's derivative section .345 right

and also make it inequitable for CSED to rely on its independent subsection .120(a) right. (Consider, for example, an obligor who makes payments directly to the obligee with CSED's permission, *in extremis*, or under an arrangement adequately protecting the child's interests.) There was no judicial determination that Green's arrangement was in Becky's best interests.[17]

Other courts have reached similar conclusions. In *State ex rel. Phipps v. Phipps*,[18] the Iowa Supreme Court held that a dissolution decree releasing a father from future support payments did not prevent the state from seeking reimbursement for AFDC payments made by the state to his child.[19] Like Green, the father in *Phipps* argued against reimbursing the state based on an agreement purporting to relieve him of child support.[20] The court held that the Iowa statute authorizing the state to seek public assistance reimbursement established an independent remedy, and that the state was therefore entitled to recover in its own right without regard to the terms of support orders affecting the parents' rights and obligations.[21] In *In re Marriage of Walje*,[22] the court required an obligor to reimburse the state for public assistance paid on behalf of his children when the obligor paid support directly to the custodial parent and children, and not through the court trustee as the decree required.[23] The

14. AS 47.25.345.

15. *Id.*

16. *See, e.g., Eston v. Aman,* 847 S.W.2d 902 (Mo. App.1993) (holding that father's obligation to reimburse state for AFDC is not extinguished by mother's settlement with father of child support arrearages claim); *State v. T.D.G.,* 861 P.2d 990 (Okla.1993) (holding that contract between mother and putative father was void against public policy and thus did not prevent state from establishing support obligations).
 *See also* AS 25.27.065(b), which makes ineffective, while the obligee parent is receiving public assistance, an agreement to waive future child support when the right to receive child support "has been assigned to a government entity," unless the agreement has been adopted by an administrative order of the agency.

17. In a related context, we decline to allow the parties to enter into child support agreements that deviate from the requirements of Civil Rule 90.3 without court approval, to avoid prejudicing

the child. *See* Alaska R. Civ. P. 90.3(c)(1); *Cox v. Cox,* 776 P.2d 1045, 1048 (Alaska 1989). *See also Richmond v. Pluid,* 925 P.2d 251, 254 (Alaska 1996) (holding that child support waivers are not valid or enforceable until and unless court has reviewed and approved their substantive adequacy under Civil Rule 90.3); *Nix v. Nix,* 855 P.2d 1332, 1334 (Alaska 1993) (holding that letter from mother partially waiving father's child support obligation was ineffective absent court approval).

18. 503 N.W.2d 391 (Iowa 1993).

19. *See id.* at 392.

20. *See id.*

21. *See id.* at 392.

22. 19 Kan.App.2d 809, 877 P.2d 7 (1994).

23. *See id.* at 10.

court recognized that this result required the obligor to pay twice. In *State ex rel. D.H.S. v. Hartless,*[24] the court held that an obligor's payments to the custodial parent did not discharge the obligor's debt to the state for public assistance paid for his children.[25]

### 2. *AS 25.27.020(b)*

Green argues that CSED should have given him credit for his lump sum payment, in accordance with CSED's own policies. CSED Policy No. 8071.4 provides:

> *Direct payments.* After the obligor is ordered to make payments through CSED, the agency may not consider direct payments made to the obligee or the obligee's custodian unless the obligor provides clear and convincing evidence of the payment. Upon receipt of such verification, CSED will credit the account.

CSED Policy No. 8054.1 provides in pertinent part:

> The Division will review written statements from the payee which verify receipt of direct payments, either crediting for support paid during specified time, dictating a specific dollar amount received, or providing for a visitation credit.

CSED argues that these policies do not apply if the state is paying public assistance. A CSED representative testified that these policies apply to non-AFDC cases, and that she would not expect the Green case to be handled as a "normal case."

These policies appear to derive from AS 25.27.020(b), which Green's brief does not discuss. This statute provides that in determining the amount an obligor must pay to satisfy "the immediate duty of support, the agency shall consider" payments made by the obligor directly to the obligee.[26] But if the obligor has been ordered to make payments through CSED, the evidentiary standard changes. In that event, CSED "may not consider direct payments" unless the obligor provides clear and convincing evidence of the payment.[27] CSED argues that giving credit "makes sense when there is no public assistance debt because, in that case, the person to whom the money is owed gets paid."

We conclude that AS 25.27.020(b) and the two CSED policies cited by Green do not automatically apply to cases governed by AS 25.27.120(a), where CSED is not collecting support on behalf of a custodial parent, but instead seeks to recoup public assistance. In the AFDC reimbursement context, CSED need not "determin[e] the amount of money an obligor must pay to satisfy the immediate duty of support."[28] Rather, it only needs to look at the amount of public assistance paid and "the amount of support provided for in the court order."[29] Alaska Statute 25.27.120(a) does not acknowledge a third contingency, i.e., whether the obligor made any direct payments to the obligee parent. At a minimum, an obligor attempting to defeat a CSED claim to recover public assistance cannot claim credit for direct payments made without judicial or CSED approval. Any possible tension between AS 25.27.020(b) and AS 25.27.120(a) can be resolved by reading subsection .020(b) to be inapplicable to a CSED claim to recover public assistance. The words "immediate duty of support" found in subsection .020(b) support this reading, because they imply that subsection .020(b) addresses amounts to be spent directly and currently for the child's support, rath-

---

**24.** 734 P.2d 330 (Okla.App.1987).

**25.** *See id.* at 333; *see also Dycus v. Cross,* 869 S.W.2d 745, 750–51 (Mo.1994) (holding that settlement agreement, which provided that neither parent would be liable to other for child support, did not relieve father of liability for reimbursement for AFDC payments made to mother after settlement).

**26.** AS 25.27.020(b) provides:

> In determining the amount of money an obligor must pay to satisfy the obligor's immediate duty of support, the agency shall consider all payments made by the obligor directly to the obligee or to the obligee's custodian before the time the obligor is ordered to make payments through the agency. After the obligor is ordered to make payments through the agency, the agency may not consider direct payments made to the obligee or the obligee's custodian unless the obligor provides clear and convincing evidence of the payment.

**27.** AS 25.27.020(b).

**28.** AS 25.27.020(b).

**29.** AS 25.27.120(a).

er than amounts to reimburse the state for payments it made to support the child in the past. We think this is the most natural and logical interpretation of the provision.

That reading is consistent with the reading CSED gives to subsection .020(b) and the CSED credit policies discussed above. We give serious weight to this interpretation in accordance with the rule that administrative agencies are given wide latitude when they are interpreting statutes they have been charged to administer.[30]

That reading is also consistent with the policies that seem to underlie AS 25.27 and the reimbursement requirement: first, that private agreements, unless approved by the agency, do not defeat the right to reimbursement and the state's duty to recover AFDC payments it makes to the obligee parent;[31] second, that a court support order should be enforced per its terms, and not be unilaterally modified by the parents or CSED; and third, that parents support their children.

Green also relies on 15 Alaska Administrative Code 125.110(b).[32] He argues that a federal regulation, 45 C.F.R. 302.51(b)(5), mandates the Alaska regulation.[33] He seems to argue that if he had paid the lump sum to CSED, these regulations would have obliged CSED to pay the excess (after satisfying arrearages, the judgment, and his then-current obligation) to Burton. This would have given the same result reached by his direct payment. But neither regulation could apply here, because Green did not pay through CSED, despite the 1990 order requiring him

to do so. The regulations provide no basis for defeating CSED's reimbursement claim here. Moreover, they do not state or imply that any part of the excess paid over to the obligee would excuse the obligor from any duty to repay public assistance paid in the future.

The dissent reasons that our interpretation of AS 25.27.120(a) "would effectively require the obligor to pay twice" and that the resulting "double payment" would violate subsection .120(a)'s mandate that the obligor's liability not exceed the amount of support provided for in the support order.[34] We do not read subsection .120(a) to address double payments; it simply preserves the state's right to a single recovery of AFDC assistance. Nor does this result "require" the obligor to pay twice. The statute did not require Green to make the unauthorized direct lump sum payment. It "requires" only one payment, and Green would have satisfied that requirement if he had paid CSED directly, as the court had ordered. The only protection subsection .120(a) offers Green pertains to the extent of his liability to repay public assistance. And it simply limits his reimbursement liability "to the amount of support provided for in the support order."[35] It looks to the terms of the order, not to the terms of a side arrangement between the obligor and obligee. That protection does not help Green because his prepayment did not alter the amount of support the court ordered. Green could have asked the court to modify the support order to reflect his

---

**30.** *See State, Bd. of Marine Pilots v. Renwick*, 936 P.2d 526, 531 (Alaska 1997); *Whaley v. State*, 438 P.2d 718, 722 (Alaska 1968) ("[T]he well settled rule ... requires courts to give consideration and respect to the contemporaneous construction of a statute by those charged with its administration, and not to overrule such construction except for weighty reasons.").

**31.** AS 25.27.065(b) reflects that policy.

**32.** 15 AAC 125.110(b) provides:

An obligor may make child support payments through the agency after making written application for this purpose. Payments exceeding the obligor's immediate support duty will be applied toward satisfaction of arrearages. If money is available after satisfying arrearages, the agency will disburse the remaining money

in accordance with the written instructions of the obligor. If the obligor does not provide written instructions or if more money is available for disbursement than provided for in the written instructions, the money will be applied toward the obligor's future duty of support established in the superior court order, notice and finding of financial responsibility, or hearing officer's decision.

**33.** 45 C.F.R. 302.51(b)(5) provides: "If the amount collected is in excess of the amounts required to be distributed under paragraphs (b)(1) through (4) of this section, such excess shall be paid to the family."

**34.** Dissent at 1258.

**35.** AS 25.27.120(a).

prepayment. Whether the court would have done so after considering the child's interests is unknown, given the amount at stake and the danger its premature exhaustion would prejudice Becky. But Green chose not to seek court approval or a reduction of the support order. He will get all the protection the statute requires if his reimbursement duty is based on the support amount the court ordered.

There is also no reason to think that Green's prepayment triggered the limitation in subsection .120(a). Green's prepayment did not address any reimbursement duty Green might have "for assistance" that might be paid in the future. By paying directly, he took the chance Burton might again receive assistance someday, thus exposing Green to additional liability under subsection .120(a). His prepayment to Burton could not discharge a future obligation Green might have to the state.

We do not think that Green's statutory liability to CSED leads to an unfair result. He chose a course that risked premature exhaustion of money needed to support his child. He took the chance his child would again require AFDC. He could have, by various measures, guaranteed that the amount he prepaid would be available to support Becky for the full term of the court order. By not doing so, he put her at risk and increased the risk the state might have to pay public assistance in the future. Moreover, even if AFDC were not involved, absent modification of the support order, a parent who prepays arguably continues to owe the child a support duty which the child can enforce if the obligee parent improvidently exhausts the prepayment. The course Green chose inherently exposed him to the danger he might have to pay more than if he had simply paid the support in the manner the court ordered.

Finally, there is no reason to decide in this case whether CSED's active involvement in approving or accepting a prepayment might give the obligor other legal or equitable defenses.

## IV. CONCLUSION

For the reasons discussed above, the direct payment did not relieve Green of his duty to reimburse the state for public assistance paid on Becky's behalf. The only question remaining is the amount of Green's liability. Under AS 25.27.120(a), it is either the amount of public assistance paid, or the amount of support required by the 1990 court order, whichever is less. We therefore REVERSE the judgment crediting the excess payment as child support and REMAND for calculation of the amount of Green's liability under AS 25.27.120(a).

MATTHEWS, Chief Justice, dissenting.

Michael Green prepaid his child support obligation in August 1990 in the sum of $39,-913. Because his ordered monthly support obligation was $625, the prepayment meant that he would be current on his child support obligation for the next sixty-three months (without calculating interest on prepaid balances), assuming no change in the support amount. In January 1992 Lori Burton, the child's mother, began collecting monthly welfare payments of $821 from the state. CSED sought reimbursement of these funds from Green. But the superior court refused to order reimbursement because Green was current on his child support obligation during every month for which reimbursement was sought. I agree with this decision for the following reasons.

Alaska Statute 25.27.120(a) limits child support obligors' liability for welfare reimbursement to the amount payable under their support orders. It provides:

> An obligor is liable to the state in the amount of assistance granted under AS 47.07 and AS 47.27 to a child to whom the obligor owes a duty of support *except that, if a support order has been entered, the liability of the obligor for assistance* granted under AS 47.[25.310—47.25.420] *may not exceed the amount of support provided for in the support order* .... [1]

Although subsection .120(a) consists of only one sentence, it does two distinct things. First, it makes a child support obligor liable

1. AS 25.27.120(a) (emphasis added).

to the state for welfare payments that the state has made on behalf of a child. ("An obligor is liable to the state in the amount of assistance granted ... to a child to whom the obligor owes a duty of support....") Second, the statute limits this liability to the amount established under a child support order. ("[I]f a support order has been entered, the liability of the obligor ... may not exceed the amount of support provided for in the support order....")

I interpret the limiting language of AS 25.27.120(a) to mean that if an obligor's support obligation is current when a welfare payment is made, the obligor is not liable to reimburse the state for that payment. A contrary result would effectively require the obligor to pay twice: once to the obligee and once to the state. Such a double payment would violate AS 25.27.120(a)'s mandate that the obligor's liability "may not exceed the amount of support provided for in the support order."

CSED does not dispute that subsection .120(a) generally protects obligors from double liability. Instead, it argues that the statute only protects obligors who make their payments to CSED, not—as in this case—directly to the obligee.

In my opinion, this argument lacks merit. The statute does not provide that only payments paid through CSED are entitled to credit when computing the "liability of the obligor for assistance." Further, direct support payments are statutorily sanctioned and routinely credited against an obligor's support obligation. The only requirement is that the obligor provide clear and convincing evidence of payment.[2] That requirement is met here.

Likewise, the fact that Green prepaid his support should not disqualify him from subsection .120(a)'s protection against double liability. No statute or regulation prohibits prepaid support or directs that it should have different legal consequences than support paid periodically. Our laws generally permit the prepayment of obligations payable in installments.[3] The only instance of which I am aware where lump sum prepayments are prohibited is in the area of workers' compensation. There the prohibition is statutory and explicit.[4] Nothing similar exists in our child support statutes or regulations.

In summary, subsection .120(a) protects obligors who are current on their child support obligations from liability to reimburse the state for welfare payments made during the same period. This protection is not lost merely because the obligor has prepaid support payments directly to the obligee before receiving notice of the welfare payments. I would therefore affirm the judgment of the superior court granting credit to Green for his prepaid support.

---

2. As CSED, citing AS 25.27.020(b) and CSED Policy 8071.4, states: "When the money is owed to the custodial parent, CSED gives credit for direct payments if the obligor provides clear and convincing evidence of the payments."

3. Indeed, penalties for prepayment are prohibited in a variety of contexts. *See, e.g.,* AS 45.45.010(g) (mortgages on dwellings); AS 45.10.070(a) (retail installment sales).

4. *See* AS 23.30.012 (requiring Board approval for lump sum settlements).