STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,

v.

Kathy A. PEALATERE, Appellee.

No. S–7507.

Supreme Court of Alaska.

Feb. 11, 2000.

Terisia K. Chleborad, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

No appearance by Appellee.

## OPINION

FABE, Justice.

## I. INTRODUCTION

In this appeal, the Alaska Child Support Enforcement Division (CSED) challenges the superior court's denial of its motion for reimbursement of public assistance. The superior court found that because a non-custodial parent met her child support obligation by relinquishing her interest in a portion of the marital property, she is entitled to an offset against the amount sought by CSED. During the pendency of this appeal, we issued an opinion in *State, CSED v. Green,*[1] holding that CSED possesses an independent statutory right under AS 25.27.120(a) to recoup the cost of public assistance payments from an obligor parent, even when the obligor has prepaid child support pursuant to an agreement executed at divorce.[2] Because this case meets an exception that we considered when we announced our rule in *Green,* we affirm the superior court's decision to allow the child support offset. But we reverse the valuation of the offset because the lower court did not account for the custodial parent's share of the marital property.

## II. FACTS AND PROCEEDINGS

Ralph and Kathy Pealatere married in 1969 and divorced on December 12, 1991. Their youngest son, Jason, was born on February 10, 1979. Under their divorce agreement, Ralph received primary physical custody of Jason, their only minor child at the time of divorce. The agreement provided that Kathy

shall not be required to pay monthly child support. Rather, KATHY has relin-

quished any and all claims to RALPH's tools in consideration of this waiver of monthly child support payments.

At the hearing on the divorce agreement, Judge Rene J. Gonzalez made an oral finding that the tools, valued at approximately $5,000, would offset Kathy's child support obligation of $50 per month. In its written findings, the superior court found that

[t]he income of [Kathy] would require her to pay the minimum of $50 per month for child support. The agreement of the parties regarding a waiver of that monthly payment obligation is supported by clear and convincing evidence and is therefore approved.

In January 1994 Ralph began receiving monthly grants of Aid to Families with Dependent Children (AFDC). Between January 1994 and June 1995, these grants were often as much as $821 per month. In 1995 CSED learned that Kathy earned an income in 1994 of $23,510.30 and filed motions both to increase Kathy's support obligation to $308 per month and to receive reimbursement of past and ongoing public assistance.

Judge Beverly W. Cutler increased Kathy's child support to $301.50 per month and ordered her to provide health insurance for Jason at a cost of $7.50 per month. The superior court, however, denied CSED's motion for reimbursement without prejudice, ruling that Kathy was entitled to a $5,000 offset against her support obligation of $50 per month because she had relinquished her interest in Ralph's tools. The court found that a credit of $2,750 from that offset remained as of October 1, 1995. CSED appealed.

On July 30, 1999, this court published an opinion in *State, CSED v. Green.*[3] In *Green* we examined the scope of CSED's statutory right to public assistance recoupment in light of an agreement between the parents calling for the non-custodial parent to pay child support in one up-front lump sum. Because we thought our decision in *Green* might assist in

1. 983 P.2d 1249 (Alaska 1999).

2. *See id.* at 1256.

3. 983 P.2d 1249 (Alaska 1999).

our resolution of the instant case, we delayed our decision of this case and ordered the parties to file supplemental briefing. Only CSED filed a supplemental brief.

## III. DISCUSSION

### A. Standard of Review

■■■■ Whether the court-approved agreement to offset marital property against future child support payments was permissible under an exception to the rule in *Green* is a question of law we review de novo.[4] "Under this standard, it is our duty to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5] We review modification of child support orders under an abuse of discretion standard.[6] An abuse of discretion occurs when, based on our review of the whole record, we are left "with a definite and firm conviction that a mistake has been made."[7] We review the superior court's findings of fact under the clearly erroneous standard.[8]

### B. The Superior Court Properly Offset Kathy's Interest in the Marital Property Against Kathy's Child Support Obligation.

CSED first argues that the trial court erred in finding that Kathy and Ralph agreed that Kathy would relinquish her interest in Ralph's tools in exchange for an offset against her child support obligation. CSED contends that Kathy provided "no evidence of any such purported agreement between the Pealateres ... at the time of the divorce proceedings" and that "[n]o agreement was ever produced." Despite these assertions, the record contains an agreement signed by Ralph, Kathy, and their counsel

and filed with the superior court November 8, 1991. Furthermore, the superior court's decree specifically noted the existence of an agreement and incorporated it by reference. Therefore, CSED's argument that the superior court erred in finding an agreement between Ralph and Kathy is without merit.

■■■■ CSED next argues that the agreement between Kathy and Ralph does not limit its right to reimbursement under AS 25.27.120(a).[9] We addressed the scope of CSED's recoupment right in *Green* and held that AS 25.27.120(a) gives CSED an independent right to recoup the cost of public assistance payments from an obligor parent.[10] CSED's right persists even when that parent has prepaid child support pursuant to an agreement executed at divorce. But we carefully noted that situations may exist in which CSED's direct and derivative rights to recoupment of public assistance payments should yield to equitable considerations. We suggested that one such circumstance would be a child support offset agreement that a court approved as serving a child's best interests:

> We need not consider whether circumstances could both defeat CSED's derivative section .345 right and also make it inequitable for CSED to rely on its independent subsection .120(a) right. (Consider, for example, an obligor who makes payments directly to the obligee with CSED's permission, *in extremis,* or under an arrangement adequately protecting the child's interests.) There was no judicial determination that *Green's* arrangement was in [his daughter's] best interests.[11]

4.  *See id.* at 1252.

5.  *Perry v. Newkirk,* 871 P.2d 1150, 1151 (Alaska 1994).

6.  *See Patch v. Patch,* 760 P.2d 526, 529 (Alaska 1988).

7.  *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989) (citation omitted).

8.  *See Adrian v. Adrian,* 838 P.2d 808, 811 (Alaska 1992).

9.  AS 25.27.120(a) provides in relevant part:

An obligor is liable to the state in the amount of assistance granted under ... AS 47.25.310—47.25.420 to a child to whom the obligor owes a duty of support except that, if a support order has been entered, the liability of the obligor for assistance granted under AS 47.25.310—47.25.420 may not exceed the amount of support provided for in the support order....

10. *See Green,* 983 P.2d at 1253.

11. *Id.* at 1254.

We believe that this case presents the exception that we contemplated when we announced the rule in *Green*.

■ The trial court decided that the equities in this case favored a child support offset against Kathy's interest in marital property. By permitting Ralph to keep his tools, the court intended that Ralph maintain his ability to support Jason with the tools that facilitated his work as a skilled laborer. The trial court found that it would not be "fair and equitable" to extract $50 monthly payments from Kathy's limited income while forcing Ralph to sell the tools "that he uses in work." In his written findings, Judge Gonzalez concluded that clear and convincing evidence supported this offset of child support payments.[12] If a child support offset preserves the custodial parent's means of support, the trial court may conclude that the offset is in the best interests of the child. Judge Gonzalez did not abuse his discretion in drawing that conclusion in this case.

The application of this exception to the rule in *Green* comports with the policy behind the rules governing child support awards. Rule 90.3(c)(1) permits courts to deviate from the formula for determining child support. Permitting this deviation supports the proposition that certain circumstances justify alternative methods for calculating a child support award. Rule 90.3(c)(1) provides:

> The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied. The court must specify in writing the reason for the variation, the amount of support which would have been required but for the variation, and the estimated value of any property conveyed instead of support calculated under the other provisions of this rule.

In this case the court found that the arrangement was in Jason's best interests and found clear and convincing evidence to support adoption of the agreement in the final decree. Thus, applying the exception to *Green* in this instance comports with the policies underlying Alaska's child support award rules.

### C. The Superior Court Properly Modified Kathy's Child Support Obligation.

■ We must next consider whether CSED's motion to modify child support altered the rate at which Kathy's child support credit would be depleted. We conclude that modification of the child support order, and the resulting increase in the rate of credit depletion, was appropriate. Rule 90.3(h)(1) allows a child support order to be modified upon a "material change in circumstances." Here Kathy saw a substantial rise in her income.[13] Moreover, Ralph's income dropped such that he began receiving AFDC payments, and this factor, combined with CSED's right to reimbursement, could justify modification of the parties' child support offset agreement.[14]

Moreover, it is immaterial that Kathy and Ralph agreed to offset all future child support based on their understanding that Kathy's payments would only be $50 per month. Our precedent clearly establishes that agreements between spouses do not prevent a court from modifying a parent's child support obligation upon the occurrence of a material change in circumstance.[15] Judge Cutler's order to modify Kathy's child support to $301.50 per month was therefore appropriate.

### D. The Superior Court Erred in Its Assessment of What Kathy May Owe to CSED.

■ Having determined that the superior court appropriately modified the child support obligation, we must now decide what Kathy owes to CSED as a reimbursement for Jason's support. Because modification of

12. Alaska Rule of Civil Procedure 90.3(c)(1) calls for all child support awards that deviate from the Rule 90.3 formula to be supported by "clear and convincing evidence."

13. "A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order." Alaska R. Civ. P. 90.3(h)(1).

14. *See, e.g., Arndt v. Arndt,* 777 P.2d 668, 669 (Alaska 1989) (holding that dramatic decrease in father's income and rise in mother's income justified modifying child support award).

15. *See Flannery v. Flannery,* 950 P.2d 126, 129–30 (Alaska 1997).

child support is only effective prospectively, Kathy's obligation to pay $301.50 per month arose when CSED filed the motion to modify in late September 1995.[16] Kathy owed Jason a duty of support until he reached the age of majority. Accordingly, she owed Jason $301.50 per month in child support from October 1995 until Jason turned eighteen on February 10, 1997. This period spanned sixteen full months. CSED had a right to collect child support in the amount of $4,824 less any amount remaining on her child support offset.

The trial court did, however, err in its valuation of the child support offset. In approving the property settlement, Judge Gonzalez found the total value of Ralph's tools to be $5,000. But Judge Cutler accepted Kathy's argument that her one-half interest in the tools was valued at $5,000 and concluded that $2,750 in credit remained. This ruling contradicted Judge Gonzalez's finding that the value of the tools totaled $5,000. Valuing Kathy's one half interest at $5,000 also contradicted Kathy's own testimony as to the tools' value:

Q: On the issue of child support, Mr. Pealatere agreed to waive future child support in exchange for your waiving any interest you may have had in his marital tools—the tools that he has had during the marriage. Is that correct?

A: Yes.

Q: And you and he agree that these tools have an approximate value of $5,000. Is that correct?

A: Yes.

Because the tools had a total value of $5,000, Kathy's fifty percent marital interest was worth only $2,500.[17] In light of Judge Gonzalez's finding and Kathy's testimony, Judge Cutler erred in granting Kathy a $5,000 child support offset; instead, the offset should have been $2,500.

■ The trial court deducted $50 per month from Kathy's child support credit for the time between January 1992—the first full month after the divorce decree—and October 1995—the first full month after CSED filed the motion to modify child support. As the trial court found, that amounted to $2,250 in child support offsets.[18] The trial court, however, failed to calculate the amount of back child support from the date of separation. Although the parties did agree to waive back child support from the date of separation, we have held that agreements to waive child support in contravention of Rule 90.3 are invalid.[19] Because the date of separation was more then five months before the divorce decree, the remaining $250 of credit was totally exhausted by the time CSED filed to modify child support. Therefore, CSED had a right to collect child support in the amount of $4,824.

## IV. CONCLUSION

We AFFIRM the lower court's granting of the child support credit and the modification of child support, but we REVERSE the lower court's valuation of the child support credit.

---

**16.** *See* Alaska R. Civ. P. 90.3(h)(2).

**17.** *See Brown v. Brown*, 914 P.2d 206, 209 (Alaska 1996) ("A 50/50 property split is presumptively just[.]").

**18.** January 1992 to October 1995 encompasses 45 months. The product of 45 months and $50 per month is $2,250.

**19.** *See Cox v. Cox*, 776 P.2d 1045, 1048 (Alaska 1989).