Victoria **FERGUSON**, Appellant,

v.

James **FERGUSON**, Appellee.

No. S–12837.

Supreme Court of Alaska.

Oct. 16, 2008.

Rehearing Denied Nov. 18, 2008.

---

Allison E. Mendel, Mendel & Associates, Anchorage, for Appellant.

Andrew Josephson, Law Offices of Dan Allan & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Victoria Ferguson appeals the superior court's order denying her motion to modify the child support agreement she entered into with her former husband, James Ferguson. She argues that the lower court failed to make an adequate inquiry into the facts underlying her claim and that it mistakenly concluded that no change of circumstances could justify a modification. Victoria also appeals the lower court's award of attorney's fees. Because the Fergusons' prior agreement contemplated Victoria's current circumstances, Victoria has already received the maximum amount of child support available under Alaska Rule of Civil Procedure 90.3. And the trial court properly concluded that Victoria can adequately provide for her children's needs. Finally, the award of attorney's fees fell within the superior court's discretion. We therefore affirm the lower court's decision in all respects.

## II. FACTS AND PROCEEDINGS

James (Jim) and Victoria Ferguson were married in 1984. They had three children together, the oldest of whom is now eighteen. They divorced in September 2001. Prior to the divorce, Jim and Victoria agreed to a division of their real estate and investment assets, and they formed a parenting plan that addressed custody, visitation schedules, and child support, among other issues. Superior Court Judge Sen K. Tan found that the Fergusons' agreement represented "a fair and equitable distribution of the marital as-

sets" that served "the best interests of the children." Accordingly, the lower court incorporated the settlement terms into its divorce decree.

Jim and Victoria agreed to an unequal property division under which Victoria was to receive $233,000 more of the marital assets than Jim in lieu of future child support payments. Victoria was also to receive $60,000 worth of assets as a lump sum spousal maintenance payment. The parenting plan contemplated "shared physical custody consisting of a minimum time of 30%–50% of the time with either parent" after a one-year transitional visitation plan. But the agreement clarified that "[t]hough the parties will have shared physical custody beginning August 1, 2002, the child support calculations are based on the mother having primary physical custody of the minor children throughout their minority." A table accompanying the plan indicates that the parties calculated child support on the basis that Jim would earn an adjusted income of $100,000, an amount that exceeded the $84,000 cap established by Civil Rule 90.3 at the time.[1]

The superior court closely scrutinized the Fergusons' child support agreement, expressing concern about the lump-sum payment of future support obligations. Judge Tan noted, "I don't know if I can set child support prospectively and essentially by agreement, remove the right to file a modification." Victoria's counsel at the time reassured the court, insisting that the Fergusons' arrangement was appropriate in the "unusual circumstance" in which "people can afford to prepay child support." Victoria's counsel added that "both parties understand that they've agreed on a certain physical [custody] arrangement today and that arrangement may change . . . [but] that is not going to change this child support arrangement." Finally, Jim's counsel pointed out that the parties calculated the child support "according to [Civil Rule] 90.3" and that the calculation "uses an annual salary of $100,000 rather than the minimum [$84,000], so if that—even if that amount did increase pursuant to [Civil Rule] 90.3, it's already taken that into account."

Following the divorce, the Fergusons soon resumed litigation that led to the appointment of a custody investigator and a guardian ad litem. For four years after the divorce, Victoria did not work because she suffered from "debilitating depression." During this time, she liquidated many of her investments and the real estate assets she had received in the divorce settlement and withdrew funds from her IRA to maintain her household. On May 6, 2004, the superior court issued a revised custody order that mandated "strict application of the week-on week-off schedule." In February 2005 Victoria resumed her former career as an engineer and began earning a gross income of $102,000.

On October 30, 2006, Victoria filed a motion to modify child support, alleging that over the past year "all three children increasingly . . . spent more time" with her. Victoria argued that the existing child support arrangement was inadequate in light of this "de facto change in the custody schedule." Her motion alleged that "none of the property that Victoria received as lump sum child support was actually liquid" and that "the parties took no account of the costs of sale or taxes to liquidate the property." Consequently, Victoria reasoned, "[t]he current arrangement is not meeting the needs of the children and needs to be modified." Jim filed a cross-motion to retroactively modify child support in case the trial court decided to "reopen the child support issue."

Superior Court Master Suzanne R. Cole conducted hearings on February 27 and May 15, 2007. During the first hearing, Master Cole identified Victoria's assertion of changed circumstances as a threshold issue and indicated that she "would like to rule on that before we get to income calculations." The master then set another hearing limited to the change of circumstances issue. After that second hearing, the master concluded that Victoria had failed to demonstrate a change of circumstances and therefore issued a recommendation without considering evidence on factors that might have informed the extent of an award modification.

1. Alaska R. Civ. P. 90.3(c)(2) (2001). The limit on income that will be considered for a child support calculation under Rule 90.3 has since risen to $100,000. *See* Alaska R. Civ. P. 90.3(c)(2) (2007).

In her recommendation to the superior court, Master Cole rejected Victoria's argument that the parties had overlooked the liquidation penalties associated with the settlement assets. The master reasoned that Victoria had knowingly entered into the settlement, which was "carefully crafted with the assistance of counsel, and subjected to close scrutiny by the court." According to the master, the parties "were aware that most of the assets were not liquid and would bear tax consequences."

The master also rejected Victoria's argument that the children's increased time in her household represented a material change in circumstances. The master pointed out that the Fergusons' agreement "anticipated a fluid custody arrangement and calculated support based upon primary custody to Ms. Ferguson to permit such fluidity." Because the Fergusons' division of property provided Victoria with "the maximum child support under the fiction of primary custody to Ms. Ferguson," Master Cole reasoned that it "already gave her what she now argues for—a primary custody calculation." Master Cole further concluded that the finality of the property division bestowed benefits upon both sides, with Jim unable to "pursue his colorable claims for modification such as his reduced income, imputed income for her, or child support when he had primary custody."

The master distinguished the case law cited by Victoria in support of modifying the child support agreement, giving particular attention to *State, Department of Revenue, Child Support Enforcement Division v. Green*.[2] That case involved a parent who exhausted a lump-sum payment of child support and had to rely on state benefits to adequately meet the needs of her child.[3] Master Cole pointed out that no court had approved the agreement at issue in *Green*, and that "[u]nlike the obligee in *Green*, Ms. Ferguson is not on the edge of poverty. Her children's needs are more than adequately met." Finally, Master Cole addressed ex-

traordinary expenses, which the Fergusons had agreed in the original parenting agreement to share provided they were "mutually agree[d] on." Master Cole recommended that the Fergusons divide these expenses equally for "any activities in which the children are currently participating."

On June 29, 2007, before the superior court had decided whether to adopt the master's report, Jim filed a motion for attorney's fees. On July 10 Victoria filed objections to the master's report, alleging factual and legal errors. Jim opposed the objections, and on July 26 Judge Tan adopted the master's recommendation. The superior court ordered Victoria to file any opposition to the motion for attorney's fees within ten days. Victoria disputed several items in the attorney billing statements and in his reply Jim revised his fee request downward from $7,329 to $6,834. Eventually, Judge Tan ordered Victoria to pay $2,050.20, or thirty percent of Jim's actual reasonable fees of $6,834.

Victoria appeals.

## III. STANDARD OF REVIEW

We review a trial court's decision to modify or deny modification of a child support order for abuse of discretion.[4] We will find an abuse of discretion only where the record as a whole leaves us with a definite and firm conviction that a mistake has been made.[5] The award of attorney's fees in a divorce action also rests within the broad discretion of the trial court and will not be disturbed on appeal unless it is "arbitrary, capricious, or manifestly unreasonable."[6]

## IV. DISCUSSION

**A. The Trial Court Did Not Abuse Its Discretion when It Determined that Victoria Failed To Demonstrate a Change of Circumstances that Requires Modification of Child Support.**

Victoria argues that the lower court incorrectly based its decision on the Fergu-

---

**2.** 983 P.2d 1249 (Alaska 1999).

**3.** *Id.* at 1251–52.

**4.** *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008).

**5.** *Id.*

**6.** *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007).

sons' intentions as they entered into their divorce settlement rather than the children's best interests or the evolution of the Fergusons' circumstances following the divorce. Quoting our decision in *Bunn v. House*, Victoria points out that "courts have a special duty with regard to the support of children whose parents have divorced...." [7] Victoria suggests that this duty should have led the lower court to modify support because "the children need additional support" and "their mother is unable to support them at the expected level." Victoria contends that her inability to provide this "expected level" of support stems from changed circumstances, namely her unemployment following the divorce, her nearly exclusive custody of the children, and the tax consequences of liquidating the assets that she received in the divorce settlement.

But the divorce settlement expressly contemplated all of the circumstances that Victoria now cites. As Jim points out, the parties' calculation of child support imputed no income to Victoria, and thus her unemployment triggered no change in circumstances. Similarly, Victoria's custody of the children fails to support her claim for modification because the Fergusons' settlement stipulates that "the child support calculations are based on the mother having primary physical custody of the minor children throughout their minority." Finally, Victoria fails to sustain her claim that the settlement inadequately accounted for the taxes and other costs associated with liquidating the assets she received. The record indicates that Victoria fairly bargained for the settlement agreement with the assistance of counsel and that her attorney strongly advocated that the agreement be accepted by the trial judge. And the property agreement itself expressly recognizes each party's right to seek the advice of a tax professional.

Victoria contends that even accepting these allegations as true—along with the lower court's finding that Victoria's $102,000 annual salary enables her to adequately meet the children's needs—the law does not support the lower court's ruling against her. In support of this claim, she cites our decisions in *Flannery v. Flannery*,[8] *Arndt v. Arndt*,[9] *State, Department of Revenue, Child Support Enforcement Division v. Green*,[10] and *State, Department of Revenue, Child Support Enforcement Division v. Pealatere*.[11] Victoria strains to draw a persuasive analogy between these cases and her own.

Victoria emphasizes our holding in *Flannery* that "particular terms" of a child support agreement will not "totally restrict the court's ability to modify it so long as a change of circumstances is proven." [12] In *Flannery*, a father sought relief under Alaska Rule of Civil Procedure 90.3(h)(1) from a private agreement to calculate child support payments on income exceeding the Civil Rule 90.3(c)(2) cap. We rejected the father's claim that his decrease in salary should trigger the "fifteen percent rule," Civil Rule 90.3(h)(1)'s presumption of a change in circumstances.[13] We also rejected the father's argument that his taking custody of two of the couple's children supported his claim for modification because that custody had already triggered a decrease in his obligations and "for there to be a substantial change of circumstance, something must occur which was not contemplated by the parties at the

---

**7.** 934 P.2d 753, 757 (Alaska 1997). In *Bunn v. House*, we vacated a superior court's modification of child support where a parent argued for adopting a different method of calculation, which yielded a more than 15% change in the support award, because "a change in a party's legal theory is not a change of circumstances which warrants the modification of a child support order." *Id.* at 758.

**8.** 950 P.2d 126 (Alaska 1997).

**9.** 777 P.2d 668 (Alaska 1989).

**10.** 983 P.2d 1249.

**11.** 996 P.2d 84 (Alaska 2000).

**12.** 950 P.2d at 130–31 (citing AS 25.24.170 and Alaska R. Civ. P. 90.3(h)(1)).

**13.** *Id.* at 132. Alaska Rule of Civil Procedure 90.3(h)(1) states:

A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order.

time they had entered into their initial agreement."[14] We nevertheless remanded for a determination of "whether any reduction in income is permanent or temporary," instructing the trial court to use its discretion to modify the child support award if there was a permanent change.[15]

But while the father in *Flannery* sought to reduce his payments to a level within or closer to the cap, Victoria seeks additional payments that would exceed the statutory cap. Victoria maintains that "the cash value" of her property settlement "was actually much less than represented in the agreement." Yet she does not allege that she received less than the maximum award allowed under Rule 90.3, conceding that the child support agreement provided "an amount higher than the Rule required."[16] Thus, the modification that Victoria seeks would award her more than the maximum amount that the law entitled her to receive in the first place.

Victoria argues that the lump-sum nature of the child support award should militate in her favor. Quoting *Arndt v. Arndt*, Victoria argues that there "should not be a trade-off" between property divisions and child support awards.[17] Like *Flannery, Arndt* involved an obligor parent's attempt to reduce a child support obligation.[18] The non-obligor parent argued that the parties' unequal property division implied that some of the child support in fact represented "disguised alimony."[19] We rejected that argument for the simple reason that "[d]ivision of marital property by the court is separate and distinct from questions of child support."[20]

Victoria proceeds to discuss cases in which the state sought reimbursement of public assistance from an obligor parent, arguing that the lower court's reliance on *State, Department of Revenue, Child Support Enforcement Division v. Green* was misplaced.[21] But Master Cole concluded that "*Green* is clearly distinguishable." We held in *Green* that the state possesses an independent statutory right under AS 25.27.120(a) to recoup the cost of public assistance payments from an obligor parent, even when the obligor has prepaid child support pursuant to an agreement executed at divorce.[22] The master noted that, unlike Victoria, the obligee in *Green* had agreed to a lump-sum prepayment of child support without court approval and "was unable to meet the needs of her children without support" from the state. Victoria characterizes the lower court's reading as unduly narrow, arguing that "nothing in the [*Green*] opinion either states or implies that the only children to whom an obligor who prepaid support 'continues to owe . . . a support duty' are those children who would otherwise be destitute." We agree with Jim that the state's claim for repayment of public assistance hardly parallels Victoria's claim for child support exceeding the $233,000 in assets that she has already received.

Victoria also relies on *State, Department of Revenue, Child Support Enforcement Division v. Pealatere*.[23] Like *Green*, and unlike this case, *Pealatere* involved a motion by the State of Alaska to recoup public assistance.[24] The state sought to modify the noncustodial parent's child support obligation, which the parties had agreed to offset in their division

---

**14.** *Flannery*, 950 P.2d at 133 (internal quotation marks omitted).

**15.** *Id.*

**16.** As a table in the parties' agreement outlines, Victoria's award reflected a calculation of the net present value of future child support payments under Civil Rule 90.3, based on Jim earning $100,000 in after-tax income. The current cap applies to adjusted annual income of over $100,000. Alaska R. Civ. P. 90.3(c)(2). At the time of the Fergusons' divorce, however, the attribution of a $100,000 salary to Jim exceeded the then statutory cap of $84,000. Alaska R. Civ. P. 90.3(c)(2) (2001).

**17.** 777 P.2d at 670.

**18.** *Id.* at 668–69.

**19.** *Id.* at 670.

**20.** *Id.*

**21.** 983 P.2d 1249.

**22.** *Id.* at 1256–57.

**23.** 996 P.2d 84.

**24.** *Id.* at 85.

of property.[25] We affirmed the lower court's modification of child support to $301.50 per month because the noncustodial parent had experienced "a substantial rise in her income."[26] We also held, however, that the superior court properly deducted $50 a month from that figure to offset the noncustodial parent's interest in marital property against her child support obligation.[27] Here, the marital assets that Jim relinquished in the settlement would offset any modified award that Victoria might receive. And Jim's lump-sum payment exceeded the maximum amount of child support that Victoria could have demanded under Civil Rule 90.3.

Victoria also claims that the superior court failed to develop an adequate factual record with respect to the children's needs, the current custody arrangement, and the reasons behind Victoria's exhaustion of the assets that she received in the property division settlement. She further alleges that the lower court made findings without sufficient factual support. We disagree.

First, Victoria argues that "[f]or purposes of analyzing whether circumstances had changed, the court should have concluded that at least two of the children were spending more than 70% of the time with their mother." But as Master Cole pointed out, the current custody arrangement served as no basis for modification because Victoria's "child support calculation already gave her what she now argues for—a primary custody calculation." Similarly, Victoria's unemployment for four years offers no grounds for relief because the property settlement imputed no income to her. And although Victoria asserts that "the cash value of the liquidated support was actually much less than represented in the agreement," she concedes that the parties "base[d] support on an amount higher than [Civil Rule 90.3] required." She makes no allegation that under Civil Rule 90.3 she was entitled to a greater amount of child support. Finally, as the lower court observed, her settlement "was carefully crafted with assistance of counsel, and subjected to close scrutiny by the court."

Victoria's contention that the lower court made factual findings without evidentiary support is also unconvincing. She points out that the lower court made a note of Jim's shift of employment from engineering to teaching and then back to engineering. But even if this factual detail lacks support in the record, it does not appear to have influenced the lower court's analysis of the case. The same rationale blunts the point of Victoria's attack on the lower court's findings regarding the alleged $1 million value of her residence and the time that the children spent in Victoria's custody. And because the superior court correctly concluded that Victoria failed to demonstrate a substantial change of circumstances, the trial court's scope of factual inquiry was appropriately limited.

This case illustrates why prepaid child support agreements require court approval and why that approval should only be granted after a careful review of the parties' circumstances. Circumstances can change, and it can be difficult to alter a prepayment agreement without injustice. In this case there was court approval of the prepayment agreement preceded by appropriate judicial scrutiny. Although Victoria believes that a substantial change of circumstances occurred in the five years following the agreement, the superior court master properly concluded that any altered circumstances were contemplated by the parties at the time they entered into their initial agreement[28] and that there was no substantial change of circumstances that justified modifying the agreement. In reaching this conclusion, the superior court master conducted appropriate proceedings, made adequate findings of fact and conclusions of law, and did not abuse her discretion.

**B. The Trial Court Did Not Abuse Its Discretion in Awarding Attorney's Fees.**

 Alaska Rule of Civil Procedure 82 applies to proceedings governing the modifi-

---

**25.** *Id.*

**26.** *Id.* at 86–88.

**27.** *Id.* at 88.

**28.** *See Flannery,* 950 P.2d at 133.

cation of child support.[29] The superior court ordered Victoria to pay $2,050.20, or thirty percent of Jim's $6,834 in actual reasonable fees, as prescribed under Civil Rule 82. Victoria contends that this decision was in error.

In support of her claim, Victoria repeats much of her argument that the children spend most of their time with her and that their care already strains her income. Victoria also points out that the lower court ordered Jim to share an equal part of the children's "extraordinary expenses" in response to her claim that Jim did not act reasonably with respect to these activities.[30] Without further specification, Victoria reasons that "[u]nder these circumstances, it was unreasonable further to burden Victoria by an award of attorney's fees." Finally, she submits that "[r]equiring Jim to bear his own costs and fees ... should not impact the children's welfare since they do not depend on him for support." Because none of Victoria's arguments suggest that the superior court abused its discretion, we affirm the superior court's award of attorney's fees.

## V. CONCLUSION

For the reasons discussed above, we AFFIRM the judgment of the superior court.

---

**29.** *See also Patch v. Patch*, 760 P.2d 526, 531 (Alaska 1988).

**30.** In their settlement agreement Jim and Victoria agreed "to share any extraordinary expenses such as out-of-state schools, summer camps and other such expenses that the parents mutually agree on." The lower court recognized Victoria's claim that Jim "had not reasonably agreed to activities or expenses previously," and reasoned that in order to "avoid further disputes,

[Jim] shall split the costs of any activities in which the children are currently participating." It went on, however, to order Jim and Victoria to "share the costs of any additional activities, as requested by the children, but not to exceed a single activity at any time, unless both parties agree otherwise." Thus, the lower court seems to have left the terms of the Fergusons' settlement in place.