*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROBERT WILLS, | ) | |
| | ) | Supreme Court No.  S-18935 |
| Appellant, | ) | |
| | ) | Superior Court No.  3AN-11-10373 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ANIELA HUMPHRIES, f/k/a Aniela Whah-Wills, | ) | |
| | ) | No. 7751 – February 21, 2025 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances:  Robert Wills, pro se, Lexington, South Carolina, for Appellant.  Notice of nonparticipation filed by Aniela Humphries, pro se, Chugiak, Appellee.

Before:  Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

CARNEY, Justice.

I.      **INTRODUCTION**

The father of three children challenges the superior court's order allowing the mother to offset the amount he owed her in attorney's fees against the child support she owed him.  We conclude that the superior court has discretion to order an offset against child support if it finds that good cause exists and the offset is in the children's best interests.  The court did not abuse its discretion by concluding that manifest

injustice would result if the mother was not granted the offset and that the offset was in the children's best interests. We affirm the superior court's order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Robert Wills and Aniela Humphries have three children, all of whom were minors when Wills and Humphries divorced in January 2012. The superior court adopted and incorporated their agreed-upon custody schedule into the divorce decree. Wills and Humphries shared joint legal custody; they initially shared physical custody of the children on an approximately 2/3-1/3 basis and switched to a 50-50 custody arrangement from January 2013 onward.

### B. Proceedings

#### 1. Humphries's motion to enforce custody order

In early November 2020, Wills emailed Humphries stating that he would not return their middle child to her care, even though she was to have custody the following week pursuant to their custody agreement. Humphries filed an expedited motion to enforce the custody agreement, which Wills opposed.

The court ordered a custody investigator to interview the middle child. The custody investigator submitted a report to the court in December. The report noted the child's concerns about not being able to participate in extracurricular activities while he was in Humphries's care. The investigator also identified concerns that the child may have been included in discussions about "adult issues" including child support and assignment of his Permanent Fund Dividend. The report also observed that the child's current "extreme level of hostility" towards Humphries "likely clouds his judgment."

The court held an evidentiary hearing in April 2021. It heard testimony from Wills and Humphries, their eldest child, Humphries's husband, and the middle child's counselor.

The court made findings on the record following the evidentiary hearing and issued a written order in early May 2021. It found that Wills had disobeyed the

custody order without cause and had done "too much to undermine" the relationship between Humphries and the middle child. The court found that it was in the child's best interest to reunify him with Humphries and ordered a gradual transition back to 50-50 custody over four consecutive weeks.

### 2. Humphries's motion for attorney's fees and award

In July Humphries moved for attorney's fees in connection with her successful motion to enforce custody. She argued that because Wills had violated the custody order, was in a "vastly superior economic position," and had not acted in good faith, she should be awarded her full attorney's fees of $32,648. Wills opposed the motion.

In October the court awarded Humphries $21,000 in attorney's fees. The court found that Wills's actions were "mistaken and ill-conceived, but not in bad faith." The court based its award on Humphries's and Wills's relative financial circumstances and the importance of the issues, citing AS 25.20.115.[1] The court ordered Wills to pay the attorney's fees within 45 days.

### 3. Modification of physical custody and child support

Despite the superior court's order requiring a return to shared physical custody, Wills moved to South Carolina with the middle child. In July 2022 he moved to modify physical custody of their two minor children after he and Humphries could not agree on custody.[2] He argued that the children's best interests were served by "remaining together" in South Carolina and spending time over school breaks with Humphries in Alaska. Humphries did not oppose the motion.

---

[1] *See* AS 25.20.115 (authorizing court to award attorney's fees and costs upon party's request in action to modify, vacate, or enforce that part of order and requiring court to "consider the relative financial resources of the parties and whether the parties have acted in good faith").

[2] The eldest child was no longer a minor at this point.

The court held hearings on Wills's motion to modify custody over two days in December 2022 and granted his motion. The court found that his move was a substantial change in circumstances,[3] that his reasons for the move were legitimate, and that modification was in the children's best interests. The court awarded Wills primary physical custody and joint legal custody with Humphries.[4] It modified child support in August, requiring Humphries to pay $1,070.89 in monthly child support for both children effective January 1, 2023.

### 4. Offset proceedings

In September 2023 Humphries filed a request to offset the amount she owed in child support by the amount Wills owed her in attorney's fees. Humphries asserted Wills had only paid $6,300 of the $21,000 he owed her. Wills opposed, arguing that Humphries's request did not constitute good cause under Alaska Civil Rule 90.3(c)(1) and that her calculations were incorrect and failed to account for interest owed on her past due child support. He asserted that he had paid Humphries $6,500, not the $6,300 that she calculated, and that Humphries's own records of his payments showed $6,399 paid. Wills filed an affidavit listing payments he made but did not provide any other supporting documents. In response, Humphries argued that the offset was proper under Rule 90.3(c) because "manifest injustice would result if [she] were required to remit funds to [Wills] when he owed her a substantial sum of money."

The court granted Humphries's request in November, ordering that her child support was offset by the amount Wills still owed in attorney's fees. The court

---

[3] *See, e.g.*, *Bagby v. Bagby*, 250 P.3d 1127, 1129 (Alaska 2011) ("[A] custodial parent's decision to move out-of-state with the children amounts to a substantial change in circumstances as a matter of law and the moving party is entitled to a hearing on a motion to modify custody as a matter of law." (brackets omitted) (quoting *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001))).

[4] The court observed that Wills and Humphries had agreed to an open-ended visitation schedule between Wills and the middle child and a set schedule for in-person visitation between Wills and the younger child.

held that "[f]or the reasons articulated in [Humphries's] motion, manifest injustice would result if [she] were required to remit funds while [Wills] owes her a substantial sum for attorney's fees."

The court found that Wills still owed Humphries $15,641.09 in attorney's fees. It adopted Humphries's accounting in an exhibit filed with her reply as "accurately showing the remaining balance assuming [Humphries's] child support obligation is offset against [Wills's] attorney fee debt." It found that if Humphries deferred paying child support until March 1, 2024 and then made a one-time payment of $491.02, Wills's attorney's fee debt would be reduced to $0. It therefore ordered Humphries to begin paying child support in March 2024 with a payment of $491.02 and the full amount of child support of $1,070.89 from April onward.

Wills appeals the offset.[5]

## III.  STANDARD OF REVIEW

We review a superior court's decision to modify child support for an abuse of discretion.[6] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[7]

But whether the superior court "applied the correct legal standard to its child support determination is a question of law that we review de novo."[8] "Similarly, 'the interpretation of Alaska Civil Rules governing child support orders is reviewed de novo; we will adopt the rule of law that is most persuasive in light of precedent, reason,

---

[5]    At oral argument before us, Wills seemed to have modified his position; he no longer questioned the court's authority to order an offset under certain conditions, but argued that it was not calculated correctly.

[6]    *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016).

[7]    *Id.* (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

[8]    *Id.* (quoting *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014)).

and policy.' "[9] We " 'reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard,' or if 'its factual findings are clearly erroneous.' "[10] "Clear error exists 'when a review of the record leaves us with a definite and firm conviction that the superior court has made a mistake.' "[11]

## IV. DISCUSSION

Wills asks us to conclude that the superior court abused its discretion by offsetting the amount Wills owed Humphries in attorney's fees against Humphries's child support obligations. We have not previously decided whether a child support offset should be granted to a parent who is owed attorney's fees by the other parent. We therefore look first at how we have addressed offsets against child support in other contexts.

Alaska Civil Rule 90.3(c) authorizes the court to order offsets against child support if good cause exists and it is in the best interests of the child. And we have considered such offsets for parents who owed the State for public assistance paid for their children.[12] Those cases make clear the superior court's broad discretion to authorize an offset against child support so long as good cause exists and the offset is in the child's best interests. We have also addressed cases in which obligor parents sought credit for children's insurance benefits (CIB) that the children received because

---

[9] *Id.* (brackets omitted) (quoting *J.L.P. v. V.L.A.*, 30 P.3d 590, 594 (Alaska 2001)).

[10] *Id.* (first quoting *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003); and then quoting *Limeres*, 320 P.3d at 296).

[11] *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (brackets omitted) (quoting *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018)).

[12] *See State, Dep't of Revenue, Child Support Enf't Div. v. Pealatere*, 996 P.2d 84 (Alaska 2000); *State, Dep't of Revenue, Child Support Enf't Div. v. Green*, 983 P.2d 1249, 1253 (Alaska 1999).

the obligor parents were eligible for federal social security benefits.[13]  The CIB cases also reinforce the superior court's discretion to authorize an offset against child support.

Reviewing the superior court's order here, we conclude that it properly ordered an offset because it found that good cause existed and that the offset was in the children's best interests.  We therefore affirm the superior court's order.

A.  **Alaska Civil Rule 90.3(c) Authorizes The Superior Court To Order An Offset Against Child Support If Good Cause Exists And It Is In The Best Interests Of The Child.**

Civil Rule 90.3 provides a framework and formula to determine child support obligations.[14]  We recognized in *Ruppe v. Ruppe* that because the " 'right to support is that of the child,' . . . the amount of child support calculated under Civil Rule 90.3 cannot be waived or modified other than for good cause."[15]  We noted that "the commentary to the Rule states that two of the major purposes of the formula are to 'ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay' and to make child support awards '[p]redictable and consistent.' "[16]

But we also noted in *Ruppe* that "Rule 90.3(c)(1) permits the court to 'vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result

---

[13]  *See Rosenbaum v. Shaw*, 459 P.3d 467 (Alaska 2020); *Pacana v. State, Dep't of Revenue, Child Support Enf't Div.*, 941 P.2d 1263, 1264 (Alaska 1997); *State, Dep't of Revenue, Child Support Enf't Div. v. Fry*, 926 P.2d 1170 (Alaska 1996); *Miller v. Miller*, 890 P.2d 574 (Alaska 1995).

[14]  Alaska R. Civ. P. 90.3.

[15]  *Ruppe v. Ruppe*, 358 P.3d 1284, 1290 (Alaska 2015) (quoting *State, Dep't of Revenue, Child Support Enf't Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 154 n.14 (Alaska 1997)).

[16]  *Id.* at 1290-91 (quoting Alaska R. Civ. P. 90.3 cmt. I.B).

if the support award were not varied.' "[17] The rule requires a court to "specify in writing the reason for the variation, the amount of support which would have been required but for the variation, and the estimated value of any property conveyed instead of support calculated under the other provisions of this rule."[18]

The good cause inquiry must "first and foremost [focus on] the needs of the children."[19] "Good cause may include a finding that unusual circumstances exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children."[20] "To justify a good cause variation, a finding of unusual circumstances must be followed by a finding that 'these unusual circumstances make application of the usual formula unjust.' "[21]

In *Brandal v. Shangin*, we held that the superior court has the discretion to authorize an offset against child support for marital property.[22] Henry Brandal and Lorraine Shangin disputed child support and marital property, including a settlement recovery resulting from depressed commercial fishing in the wake of the *Exxon Valdez* oil spill.[23] The court ordered Shangin to pay child support to Brandal, but delayed payment until she received her share of the settlement money.[24] Brandal argued on appeal that the court lacked authority to allow Shangin to delay payment of past due

---

[17]    *Id.* at 1291 (quoting Alaska R. Civ. P. 90.3(c)(1)).

[18]    Alaska R. Civ. P. 90.3(c)(1).

[19]    *Ruppe*, 358 P.3d at 1291 (quoting *Koller v. Reft*, 71 P.3d 800, 807 (Alaska 2003)).

[20]    *Christopher D. v. Krislyn D.*, 426 P.3d 1118, 1121 (Alaska 2018) (quoting Alaska R. Civ. P. 90.3(c)(1)).

[21]    *Id.* (quoting Alaska R. Civ. P. 90.3 cmt. VI.B).

[22]    36 P.3d 1188 (Alaska 2001).

[23]    *Id.* at 1191.

[24]    *Id.* at 1192.

child support until she received her share of the settlement because "child support is a special debt on behalf of children that is separate from property division."[25]

We held that "[a] trial court has discretion to approve an offset against marital property for child support when it is in the child's best interests."[26] We upheld the superior court's decision to offset Shangin's child support against the marital property distribution "[i]f on remand the trial court finds that it is in the children's best interests to do so."[27] But because the court had not found that it was in the children's best interests to allow Shangin to delay payment, we remanded the issue for the court's consideration.[28] *Brandal* confirms the superior court's broad discretion under Rule 90.3(c) to authorize an offset against child support so long as it finds that such an offset is in a child's best interests and therefore that good cause to vary child support exists.

**B.** **Our Case Law Authorizing Offsets Against Child Support In Similar Contexts Also Confirms The Superior Court's Broad Discretion To Authorize An Offset.**

We have previously considered offsets against child support for parents who owed the State for public assistance paid for their children. We concluded that the superior court has broad discretion to authorize an offset against child support so long

---

[25] *Id.* at 1195.

[26] *Id.* In *Brandal* we used the phrase "offset against marital property for child support" instead of offset against child support, but this phrase should be read in context. *Id.* Because the amount Brandal owed Shangin to equalize the property division "was likely to exceed [Shangin's] child support arrearages," the amount of child support owed had to be offset against marital property. *Id.*

[27] *Id.*

[28] *Id.* We also considered in *Elder v. Elder* the question of whether an offset against child support based on a father's veteran's disability benefits was available and remanded it to the superior court. S-9187, 2002 WL 32903104 at *3 (Alaska Jan. 9, 2002). We noted in *Elder v. Elder* that our case law permitted offsets of certain benefits against a child support obligation and remanded the issue to the superior court for further factual development. *Id.*

as good cause exists and the offset is in the child's best interests. We also have considered whether obligor parents ought to be given credit for CIB paid to their children derived from the obligor parents' federal social security benefits. Those cases, too, reinforce the superior court's discretion to authorize an offset against child support.

### 1. The public assistance cases support the superior court's broad discretion to authorize an offset against child support.

Under AS 25.27.120, "[a]n obligor parent who 'owes a duty of support' 'is liable to the state' for public assistance paid to the child."[29] We have considered two cases in which parents sought offsets against their resulting obligation to pay child support to the State.

In *State, Department of Revenue, Child Support Enforcement Division v. Green*, we addressed whether the superior court erred by crediting a father's payment of a lump sum to the mother without judicial approval against his future child support obligation and therefore against the State's claim for reimbursement of public assistance.[30] We concluded that the State was entitled to recoup public assistance under AS 25.27.120 and the father "could not defeat or diminish his direct liability to [the State] by paying [the mother] directly."[31] Yet we noted that the State's rights to recoupment may yield to equitable considerations in some circumstances — such as a parent making payments directly to the other "under an arrangement adequately protecting the child's interests."[32] But we also observed that parents must receive court approval to enter child support agreements that deviate from Rule 90.3 to avoid

---

[29] *State, Dep't of Revenue, Child Support Enf't Div. v. Green*, 983 P.2d 1249, 1253 (Alaska 1999) (quoting AS 25.27.120(a)).

[30] *Id.* at 1251.

[31] *Id.* at 1253-54.

[32] *Id.* at 1254.

-10- 7751

prejudicing the child.[33]   And in *Green*, there was no judicial determination that the offset was in the child's best interests.[34]   The decision suggests, however, that a court-approved child support offset agreement is a permissible exception to Rule 90.3 when the offset is in the child's best interests.

A few years later, in *State, Department of Revenue, Child Support Enforcement Division v. Pealatere,* we confronted "the exception that we contemplated when we announced the rule in *Green*."[35]   At issue in *Pealatere* was whether a mother was entitled to an offset against child support after the parents entered into a judicially approved divorce agreement that provided that she would relinquish all claims to the father's tools (valued at approximately $5,000) in consideration of the father waiving $50 in monthly child support payments from her.[36]   We held that she was, explaining that "[i]f a child support offset preserves the custodial parent's means of support, the trial court may conclude that the offset is in the best interests of the child."[37]   We noted that the superior court concluded that the equities in *Pealatere* favored an offset against the mother's interest in the tools because it would not be " 'fair and equitable' to extract $50 monthly payments from [the mother's] limited income" while forcing the father to sell tools that he needed for work."[38]   The superior court therefore permitted the father to keep his tools so that he could "maintain his ability to support [the child]."[39]   We concluded that the offset comported "with the policies underlying Alaska's child support award rules" because there was clear and convincing evidence of good cause

---

[33]   *Id.* at 1254 n.17.

[34]   *Id.* at 1254.

[35]   996 P.2d 84, 87 (Alaska 2000).

[36]   *Id.* at 85.

[37]   *Id.*

[38]   *Id.*

[39]   *Id.* at 87.

for variance and that it was in the child's best interests.[40]  We therefore held that the superior court did not abuse its discretion by authorizing the offset.[41]

Green and Pealatere together support the superior court's broad discretion to authorize an offset against child support so long as good cause exists and the offset is in the child's best interests.  And they suggest that the court may authorize an offset against child support whenever there is clear and convincing evidence that it is for good cause and in the child's best interests.

**2.  The CIB decisions also reinforce the superior court's broad discretion to authorize an offset against child support.**

Our CIB offset decisions address two scenarios:  (1) parents seeking an offset against past due child support for CIB payments to their children; and (2) parents seeking an offset against future child support for past overpayments arising from CIB payments to their children.[42]  Though most of these decisions do not squarely address Rule 90.3(c)(1), they nevertheless suggest that an offset for CIB payments against past due child support constitutes good cause to vary a child support award, but an offset for CIB payments against future child support does not.[43]  They thus support the superior court's discretion to authorize an offset against child support.

We first confronted this issue in *Miller v. Miller*.[44]  There we concluded that the payment of CIB to the children in connection with the father's social security

---

[40]    *Id.*

[41]    *Id.*

[42]    *See, e.g.*, *Rosenbaum v. Shaw*, 459 P.3d 467, 472 (Alaska 2020) (distinguishing between "overpayments offsetting past arrearages" and "overpayments serving as a basis for future credit or reimbursement").

[43]    *See Pacana v. State*, *Dep't of Revenue, Child Support Enf't Div.*, 941 P.2d 1263, 1267 (Alaska 1997) (authorizing offset for overpayments against past due child support); *Rosenbaum*, 459 P.3d at 475 (concluding parent could not seek offset against future child support based on overpayments already made).

[44]    890 P.2d 574 (Alaska 1995).

retirement benefits entitled him to receive an offset against past due child support.[45] We observed that an "overwhelming majority of states that have considered this issue" allowed such an offset because "unlike welfare and other forms of public assistance, social security benefits represent contributions that a worker has made throughout the course of employment" and so represent earnings "in much the same way as do annuities paid by an insurance policy."[46] We agreed and allowed the children's CIB payments to count toward child support obligations.[47] Although we did not specifically rely on Rule 90.3(c)'s good cause exception in authorizing the offset against child support, *Miller* makes clear that the superior court enjoys discretion to order such an offset.[48]

In *Miller*, we also explained that "no theoretical basis" existed to distinguish between disability and retirement benefits.[49] Therefore in *State, Department of Revenue, Child Support Enforcement Division v. Fry*, we applied *Miller*'s retirement-benefit holding to disability benefits and held that an offset against child support could be authorized for CIB payments made in connection to disability benefits.[50]

---

[45]     *Id.* at 576-77.

[46]     *Id.* at 576 (quoting *Pontbriand v. Pontbriand*, 622 A.2d 482, 484 (R.I. 1993)).

[47]     *Id.* at 577.

[48]     The father seeking the offset argued in the alternative that if he did not get a "dollar-for-dollar credit," he should at the very least be entitled to vary child support for "good cause" under Civil Rule 90.3. *Id.* at 576. But because we decided that the father was entitled to a "dollar-for-dollar" offset against child support, we did not decide whether the social security benefits the child received was "good cause." *Id.* at 577.

[49]     *Id.* at 577.

[50]     926 P.2d 1170, 1172, 1174 (Alaska 1996).

In *Pacana v. State, Department of Revenue, Child Support Enforcement Division*, we extended *Miller* and *Fry* and decided a parent could receive an offset against child support for "CIB payments made before the parent moves to modify child support."[51] We concluded that because CIB payments are "regular monthly payments" that the custodial parent is aware of, they can be credited against a child support obligation. Further, Rule 90.3(h)(2), which restricts the retroactive modification of a child support order, does not preclude a court from ordering an offset.[52] *Miller*, *Fry*, and *Pacana* together reinforce the superior court's broad discretion to authorize an offset against child support.

*Rosenbaum v. Shaw* is our most recent case dealing with an offset against child support for CIB payments.[53] *Rosenbaum* concerned a father who regularly paid child support and began receiving social security payments.[54] As a result, his daughter received CIB payments paid to her mother.[55] But the father was unaware that CIB payments could be credited against his child support obligations.[56] Once the father discovered that CIB payments could be credited, he stopped paying child support and sued to recover overpaid child support as either a reimbursement or a credit against future payments.[57] We distinguished between using CIB payments to offset past due child support (as in *Pacana*) from using them to credit future or reimburse past child support.[58] After considering a number of out-of-state cases, we concluded that those

---

[51]    941 P.2d 1263, 1264 (Alaska 1997).

[52]    *Id.* at 1266.

[53]    459 P.3d 467 (Alaska 2020).

[54]    *Id.* at 469.

[55]    *Id.*

[56]    *Id.*

[57]    *Id.* at 469-70.

[58]    *Id.* at 472.

that would deny the father reimbursement or credit were more persuasive.[59] We concluded that it was "more fair to allocate the risk of loss to [the father]" because "[h]e was the parent making the overpayments," and had the opportunity to notify the State but did not do so.[60] We also observed that we "should be hesitant to create a . . . rule that strips the money from the child's household after the money has already been provided for the child"; and that "reimbursement could wreak havoc for the custodial household where it is allowed for payments made months or years in the past, when the CIB monies would likely have been long since budgeted and expended."[61]

In *Rosenbaum*, we observed that other Alaska cases supported "the general proposition that voluntary overpayments should not be reimbursed or credited against future payments."[62] We first cited *Epperson v. Epperson*, where we held that an obligor's "past voluntary contributions in excess of his support obligation [did] not constitute good cause for reducing his future child support obligation."[63] In *Epperson* a father argued in response to the mother's motion to modify his child support obligation that his voluntary payments to the mother since their divorce constituted "good cause" to reduce his child support obligation to $0.[64] We held that while we had previously allowed past excess voluntary contributions to be credited against past due child support, it would be contrary to Rule 90.3 to offset such contributions against future child support payments except in exceptional circumstances."[65] We therefore

---

[59]     *Id.* at 472-74.

[60]     *Id.* at 475.

[61]     *Id.* (alteration in original).

[62]     *Id.* at 474-75.

[63]     *Epperson v. Epperson*, 835 P.2d 451, 453 (Alaska 1992), *quoted in Rosenbaum*, 459 P.3d at 475.

[64]     *Id.* at 452-53.

[65]     *Id.* at 453.

concluded that the father's past voluntary contributions in excess of his child support obligation did not constitute good cause for reducing his future child support obligation.[66]

We then turned to *Ruppe v. Ruppe*, which involved overpayments of child support by a father to the mother; the superior court awarded an offset for the overpaid amount against the father's future child support obligations.[67] We held that "[e]ven if [the father] had paid [the mother] too much during the interim period, it was error to credit any voluntary overpayment against his future obligations."[68] We reversed the superior court's award of the offset against future child support obligations.[69] We noted that we suggested in *Epperson* that an offset against future child support obligations should only be recognized in "exceptional circumstances," such as "if the parties agreed at the time the contributions were made that they would constitute prepayment of future child support."[70] We concluded that "exceptional circumstances" did not exist in *Ruppe* because the father's claimed overpayment was made pursuant to a plan that he proposed.[71] He did not directly pay the mother the amount prescribed by Rule 90.3, instead partly relying on an in-kind contribution of housing to fulfill his obligation.[72] We noted that "while [the father's] provision of housing easily satisfied the difference between what he did pay and that prescribed amount [of child support], any excess

---

[66]  *Id.*

[67]  *Ruppe v. Ruppe*, 358 P.3d 1284, 1287-88 (Alaska 2015), *discussed by Rosenbaum*, 459 P.3d at 475.

[68]  *Id.* at 1292, *quoted in Rosenbaum*, 459 P.3d at 475.

[69]  *Id.*

[70]  *Id.* (citing *Epperson*, 835 P.2d at 453), *discussed by Rosenbaum*, 459 P.3d at 475.

[71]  *Id.*

[72]  *Id.*

-16-                                                                            7751

value of that housing should not have been credited against his future child support obligations."[73]

We concluded in *Rosenbaum* that good cause to vary child support does not exist under Rule 90.3(c) when an obligor parent seeks to offset past overpayments against future child support obligations.[74] In contrast, *Miller*, *Fry*, and *Pacana* recognized good cause to grant an offset against past due child support.[75] Our cases that consider CIB payments reinforce the superior court's discretion to authorize an offset against child support when good cause exists.

### C. The Superior Court Did Not Abuse Its Discretion By Ordering An Offset.

Having concluded that Rule 90.3(c) permits the superior court to order an offset against child support for good cause and when it is in the best interests of the child, we now turn to the superior court's exercise of that discretion. Rule 90.3(c) requires "clear and convincing evidence that manifest injustice" would result without a deviation from the standard formula calculation. The rule also states that "[g]ood cause may include a finding that unusual circumstances exist" which require varying child support to an amount "which is just and proper for the parties to contribute toward the nurture and education of their children."[76]

The court did not abuse its discretion when it granted Humphries an offset. The court specified the reason for the variance in writing, explaining that "manifest injustice would result" if Humphries were required to pay child support while Wills owed her "substantial sums for attorney's fees." The court found clear and convincing

---

[73] *Id.*

[74] *Rosenbaum*, 459 P.3d at 475.

[75] *See id.* at 472 (distinguishing between "overpayments offsetting past arrearages" and "overpayments serving as a basis for future credit and reimbursement").

[76] Alaska R. Civ. P. 90.3(c).

evidence of these "unusual circumstances." It issued the order after a series of lengthy proceedings, including two evidentiary hearings — first over enforcing the original custody order and next over modifying physical custody — and after an order granting Humphries attorney's fees. The court was familiar with the parties and the case and was fully apprised of their incomes, including Wills's "far superior" financial position. It was therefore able to determine that granting the offset would not leave the children lacking sufficient support.[77] And the court credited Humphries's assertion that she could have used the money Wills owed her to travel to see the children in South Carolina, which would have been in the children's best interests.

We affirmed the court's order in *Pealatere* because we concluded that it had found that the arrangement was in the child's best interests and clear and convincing evidence existed to support adopting the parents' agreement.[78] The court found that the mother relinquished any claims to the father's tools "in consideration of this waiver of monthly child support payments" and that "[t]he agreement of the parties regarding a waiver of that monthly payment obligation is supported by clear and convincing evidence and is therefore approved."[79]

The order here was more specific than the one in *Pealatere*: it found that manifest injustice would result if the offset were not granted and if Humphries were instead required to pay child support to Wills while he owed her $15,641.09. The court

---

[77] *Cf. Ruppe v. Ruppe*, 358 P.3d 1284, 1291 (Alaska 2015) ("Crediting payments that provide a home for a spouse and children against child support obligations risks leaving children with insufficient support.").

[78] *State, Dep't of Revenue, Child Support Enf't Div. v. Pealatere*, 996 P.2d 84, 87 (Alaska 2000).

[79] *Id.* at 85.

found good cause to order the offset and that the offset was in the children's best interests. It did not abuse its discretion.[80]

## V.    CONCLUSION

We AFFIRM the grant of an offset against child support.

---

[80]    Wills also asserts that Humphries's exhibit calculating the proposed offset "had plain errors." But he did not provide any legal support for his argument. While " '[w]e apply a more lenient standard to pro se litigants' and 'consider pro se pleadings liberally in an effort to determine what legal claims have been raised,' . . . 'a pro se litigant's briefing must allow his or her opponent and this court to discern the pro se's legal argument' " to avoid waiver of his argument. *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) (footnotes omitted) (first quoting *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005); then quoting *Toliver v. Alaska State Comm'n for Hum. Rts.*, 279 P.3d 619, 622 (Alaska 2012); and then quoting *Casciola*, 120 P.3d at 1063).

Even if the argument was not waived, Wills appears to be confused about two similar-sounding legal terms, "clear error" and "plain error." We review a trial court's findings of fact for clear error and will conclude that clear error exists "when 'our review of the record leaves us with the definite and firm conviction that the superior court has made a mistake.' " *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015) (quoting *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006)). By contrast, "[p]lain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1124 (Alaska 1996).

Wills's argument seems to be that Humphries's initial calculations were incorrect, which they were. But the error was corrected in the exhibit filed with her reply and that is the calculation on which the court based its order. The court did not err in calculating the award based on Humphries's corrected filings.